Clara **GOLIDAY**, Carrie **Reed**, Vera **Smith**, individually and on behalf of all others similarly situated, Plaintiffs, **Brenda Davidson**, Intervening Plaintiff,

v.

William H. **ROBINSON**, Director, Cook County Department of Public Aid; Harold O. Swank, Director, Illinois Department of Public Aid, Defendants.

No. 69 C 73.

United States District Court
N. D. Illinois, E. D.

Nov. 25, 1969.

Gordon H. S. Scott, Charles Barnhill, Jr., Sherwin Kaplan, George Berns, Legal Aid Bureau, Chicago, Ill., for plaintiffs and intervening plaintiff.

William J. Scott, Atty. Gen., State of Illinois, Edward V. Hanrahan, State's Atty. for Cook County, Chicago, Ill., for defendants.

Before KILEY, Circuit Judge, and PARSONS and NAPOLI, District Judges.

## MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

This is an action for injunctive and declaratory relief under 42 U.S.C. § 1983. The only facts we have are those admitted by the pleadings. The named plaintiffs are recipients of public assistance in Illinois, each of whom had assistance terminated, suspended, or reduced, without a prior hearing of any kind.

Plaintiff Clara Goliday, a recipient of public assistance since 1958, failed to receive her regular assistance grant of $251.00 in October, 1968. After a personal request and additional delay, a check was issued to her for $166.00. The following month, she received a check for $121.00. Upon inquiry into the reasons for the two unexplained reductions, she was informed that the department had information indicating that she was purchasing a home. When confronted with this information, she filed an intra-departmental appeal contesting the reduction. As of the date of the filing of the complaint in this ac-

tion, January 14, 1969, no hearing had been held.

Plaintiff Carrie Reed and her three children had been receiving assistance of approximately $250.00 per month when, in November of 1968, instead of receiving the second of her bi-monthly checks, she received a notice that her aid was being terminated. She requested an explanation and was informed that her son, Anthony, had been found to earn income the previous month in excess of the monthly grant, thus rendering her ineligible for further assistance. She was afforded no prior hearing on that determination.

Plaintiff Vera Smith received emergency assistance of $143.00 in July, August, and September of 1968. In October, 1968, she received no assistance. She was neither notified that the grant had been terminated, nor of the right to appeal such termination. Although she has requested an explanation for the termination on several occasions, at the time of the filing of this suit, none had been forthcoming.

The intervening plaintiff, Brenda Davidson, and her nine children received public assistance until January, 1969, when her aid was suspended without notice. She requested an explanation and was told that her landlady had called the Department of Public Aid and stated that Mrs. Davidson was not paying rent. The department stated that she would not receive assistance until an investigation was completed.

Plaintiffs all seek a declaratory judgment to the effect that Sections 11–7 and 11–16 of the Illinois Public Aid Code, Ill.Rev.Stat.1967, Ch. 23, § 11–7 and § 11–16, and the rules and regulations implementing these sections, are unconstitutional.[1] They contend that these statutes and regulations provide that public assistance may be terminated, reduced or withheld without prior notice and a "fair hearing" to the public assistance recipient and thereby, as enacted and as applied, deprive them of due process secured by the Fourteenth Amendment.

On January 20, 1969, the trial judge to whom this case was assigned issued a temporary restraining order under 28 U.S.C. § 2284(3), restraining the defendants from refusing to pay each of the named plaintiffs the public assistance each such plaintiff received before the reduction, suspension, or termination, and granted plaintiffs' application for the convening of a three-judge court pursuant to Title 28, U.S.C. § 2281, to determine whether the due process clause of the Fourteenth Amendment to the Constitution requires notice and an opportunity to be heard before reduction, suspension, or termination, and, if so, whether the provisions of Sections 11–7 and 11–16, and their implementing regulations, meet that requirement.

---

1. The applicable provisions of the Illinois Public Aid Code and its implementing regulations read in pertinent part as follows:
Section 11–16 provides: All grants of financial aid under this Code shall be considered as frequently as may be required by the rules of the Illinois Department. After such investigation as may be necessary, the amount and manner of giving aid may be changed or the aid may be entirely withdrawn if the County Department, local government unit, or Illinois Department finds that the recipient's circumstances have altered sufficiently to warrant such action. Financial aid may at any time be cancelled or revoked for a cause or suspended for such period as may be proper.

Section 11–7, provides: Whenever decision is made to terminate aid, the recipient shall be notified in writing within 10 days following the decision. The notice shall set out the specific reasons for the termination. * * * The notice shall include a statement defining the recipient's right to appeal.
Section 4005.5 of the Illinois Public Aid Manual provides: The recipient should be helped to clearly understand any change in eligibility which affects the amount of his grant and be given an opportunity to discuss the situation, raise any question, or provide additional information before (at least 10 days, if possible) any reduction or termination of the grant.

Under the Social Security Act, 42 U. S.C. § 301 et seq., a state receiving federal funds is required to provide a welfare recipient a "fair hearing" at some time after it has denied his application, or terminated or suspended his payments. "A State plan * * * must * * * provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for [aid or assistance under the plan] is denied or is not acted upon with reasonable promptness." Sections 302(a) (4), 602 (a) (4), 1202(a) (4), 1352(a) (4), and 1382(a) (4) of 42 U.S.C.

Sections 11–8, Chapter 23, Illinois Revised Statutes, 1967, meets this requirement by providing for an appeal by a recipient at any time within 60 days after such a decision, or, if no decision has been made, within 30 to 60 days after the filing of the application. Defendants contend that this right to appeal constitutes a complete remedy meeting all requirements of due process.

"It has long been recognized that where harm to the public is threatened, and the private interest infringed (by action of a governmental agency) is reasonably deemed to be of less importance, an official body can take summary action pending a later hearing." R. A. Holman and Co. v. S.E.C., 112 U.S.App. D.C. 43, 299 F.2d 127, 131(1962). Such a departure from the general rule that a hearing must take place before an administrative order becomes operative will be justified, however, only when the agency is able to show a peculiarly urgent governmental interest such as national security or public health. North American Cold Storage Co. v. City of Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) ; Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) ; Cafeteria and Restaurant Workers, etc. v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L. Ed.2d 1230 (1961) ; Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

The interest of the state in delaying a hearing until after assistance has been discontinued is principally financial. At the time of the filing of this case, the State of Illinois had 409,000 welfare recipients. Every month, there are a great number of suspensions and terminations, a high percentage of which are later found to have been fully justified. To provide expeditious hearings prior to termination would require additional administrative personnel, and the opportunity to recoup moneys improvidently paid out is almost totally nonexistent. The total costs of a program other than that being followed would be substantial. Nevertheless, while the total cost may be substantial and significant to an economic administration of the program, it must be measured against the severity in cost and deprivation to each of the recipients erroneously cut off from welfare aid. Just as the cost to the public is multiplied by the numbers involved, so also the total cost to erroneously suspended or removed recipients, when measured by the injuries experienced by them, is staggering. An appeal system which follows termination does not reduce this kind of cost. Public Welfare: The Right to a Prior Hearing, 76 Yale L.J. 1234, 1242 (1967). It is our considered opinion that the government's interest in its welfare program in protecting its administrative costs against losses is insufficient to justify a procedure of summary termination, suspension, or reduction of a recipient's benefits prior to notice and a hearing no matter how adequate an appeal procedure may be.

We reach this conclusion by way of our finding that if it is necessary to cast the matter of (the receipt of) public aid (governmentally provided) to the needy in one or the other of the long-labored-with molds of privileges or rights, we must classify it as a right and we so do. "Experts in the field of social welfare have often argued that benefits should rest on a more secure basis, and that individuals in need should be deemed 'entitled' to benefits. See Ten Broek & Wilson, Public Assistance and Social Insurance—A Normative Evaluation, 1 U.C.L.A.L.Rev. 237 (1954);

Kieth-Lucas, Decisions about People in Need (1957). The latter author speaks of a 'right to assistance' which is the corollary of the 'right to self-determination' (id. at 251) and urges public assistance workers to pledge to respect the rights and dignity of welfare clients (id. at 263). See also Wynn, Fatherless Families, 78–83, 162–63 (1964) * * *" Charles A. Reich, The New Property, Yale Law Journal, Vol. 73, April 1964, p. 786, fn. 233. And in reaching this conclusion we find ourselves impelled by the thinking which runs parallel with the discussion of the Supreme Court (Mr. Justice Brennan delivering the opinion of the Court) in its April 21, 1969, decision in the case of Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600,[2] and of the District Court decisions which in footnote 1 of that case the Supreme Court found in accord.[3] If further strength from the judicial thought of the Supreme Court were needed to impel our conclusion, we find it in the thinking which runs parallel with the discussion of that Court (Mr. Justice Douglas delivering the opinion) in its June 19, 1969, decision in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349.[4] (See also Kelly v. Wyman, 294 F.Supp. 893 (S.D.N.Y.1968); Smith v. King, 277 F.Supp. 31 (M.D. Ala.1967).

Defendants contend that even if the due process clause of the Fourteenth Amendment requires some form of notice and hearing prior to termination, reduction, or suspension, Regulation 4005.5 of the Illinois Public Aid Manual meets this requirement. They say that even if the statute is unconstitutional on its face, an implementing regulation which provides a procedure, which, if followed, would afford due process of law, would clear up any infirmity to be found on the face of the statute.

Section 4005.5 of the Illinois Public Aid Manual does not clear away the statutory defect of which we speak but is clearly defective on a number of counts. First, it does not provide for a hearing in a formal sense, but rather, by the admission of one of the drafters of the regulation, for a mere "discussion" with a case worker. Kelly v. Wyman, op. cit. *supra*. Second, the regulation does not provide for notice of this discussion so that the welfare recipient can prepare his case, or, at least, have a reasonable time to understand the charges and reasons for such discussion. Dixon

---

2. The Shapiro case dealt with the constitutionality of certain state statutes which prohibited an otherwise qualified recipient of welfare from receiving aid until after a waiting or residency period of one year. The Supreme Court held such statutes unconstitutional in that they created two classes of needy resident families: One composed of residents who had resided a year or more, and the other composed of residents who had resided less than a year in the jurisdiction. The court stated at page 627, 89 S.Ct. at page 1327: " * * * [A]ppellee's central contention is that the statutory prohibition of benefits to residents of less than a year creates a classification which constitutes an invidious discrimination denying them equal protection of the laws. We agree." The underlying principle in the decision is that a recipient, if otherwise qualified, has a right to welfare payments which should not be denied them during a preliminary period of residence in a new state.

3. Robertson v. Ott, 284 F.Supp. 735 (D. Mass.1968); Johnson v. Robinson, 296 F.Supp. 1165 (N.D.Ill.1969); Ramos v. Health and Social Services Bd., etc., 276 F.Supp. 474 (E.D.Wis.1967); Green v. Dept. of Public Welfare, 270 F. Supp. 173 (D.Del.1967).

4. Here, the Supreme Court held that the interim freezing of wages without a hearing violated procedural due process. The court, at page 340, 89 S.Ct. at page 1822, quoted favorably the remarks of Congressman Reuss of Wisconsin to the effect that garnishment procedure, which results in the stoppage of family income, " * * * is a most inhuman doctrine. It compels the wage earner, trying to keep his family together, to be driven below the poverty level." (114 Cong.Rec. H688, Feb. 1, 1968) The same reasoning is readily applicable to the instant case.

v. Alabama State Board of Education, 294 F.2d 150 (5 Cir. 1969), cert. den. 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961). Finally, the regulation does not require that a decision, or confirmation and review of such decision, be made in order to terminate, suspend, or reduce aid to the recipient. Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950); Rios v. Hackney, 294 F.Supp. 885 (N.D.Tex.1967). Without providing the bare minimums of a full hearing with notice and opportunity for confrontation and some decision making process resulting from such hearing, the Illinois regulation cannot remove the defect in the statute here in question.

Even if it did, where a statute is infirm on its face, any regulation for implementing or construing it, be it ever so carefully drafted and followed, is nevertheless incapable of clearing up the infirmity in the statute so as to give it standing against an attack made on the constitutionality of the statute. Cf. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); United States v. Livingston, 179 F.Supp. 9, (E.D.S.C.1959); aff'd Livingston v. United States, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719 (1960); The Void-for-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67 (1960) at 94. Agency regulations, changeable as they are from day to day at the discretion of the administrative agency, are insufficient to assure a fundamental right. They may implement that assurance provided adequate statutory standards are set to insure that the right will be firm and unequivocal. Opp Cotton Mills v. Administrator of Wage and Hour Division, 312 U.S. 126, 657, 61 S.Ct. 524, 85 L.Ed. 624 (1941); Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948).

We do not propose to outline what statutory revision is required in this case. We merely hold that, as to this statute, notice and an opportunity to be heard must precede a termination. We do not propose that the initial hearing must in every manner comport with the requirements of due process exacted by court decisions with relation to other types of administrative agencies. We do not propose that in providing a program of public aid the constitutional requirement of due process calls for full-blown adversary proceedings. Conceivably, the constitutional protection may be satisfied by an informal conference to which the recipient has had timely notice, and at which he has the opportunity to confront the evidence against him to state his case, with some form of memorandum made in conjunction with the conference and made available to the recipient should he desire to pursue the matter on appeal. Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Kelly v. Wyman, *supra*.

The concept of fundamental fairness to which a state is held to answer dictates that when, in the exercise of its duty and authority over the public health, welfare and safety, it bestows *even a gratuity* upon a citizen, that gratuity may not be withdrawn without *prior notice and an opportunity to be heard.* Kelly v. Wyman, *ibid.* The concept of fundamental fairness dictates that the statute itself must provide the procedure which protects the people against arbitrariness and unfairness. United States v. Southern Ry. Co., 364 F.2d 86 (5 Cir. 1966), cert. den. 386 U.S. 1031, 87 S.Ct. 1479, 18 L.Ed.2d 592 (1967).

We fully recognize that our decision here poses problems to the state and its counties in their efforts to provide public aid to those who truly are in need of assistance. The hard core problem is that of their being able to continue supplying a reasonable sustaining subsistence pending a preliminary determination of whether the recipient is or continues to be entitled to it. It is inconsistent with the concept of fundamental fairness if under a system permitted by state statute any family, as a result of a mistake on the part of the state agency, is made to try to survive without funds for food, shelter and clothing—the depth of pain of which

cannot later be found compensable in dollars and cents.

Accordingly, we hold that Sections 11–7 and 11–16 of the Illinois Public Aid Code, Ill.Rev.Stat.1967, Ch. 23, § 11–7 and § 11–16, are unconstitutional on their face as violative of the Due Process of Law Clause of the Fourteenth Amendment, and are null and void, and henceforth of no force and effect.

We hold that as to the plaintiffs herein, the restraint hereinbefore applied temporarily on their behalf is made permanent, and that the plaintiffs, not having asked for damages, may receive in money only their costs, and that the costs of this cause be and the same hereby are assessed to the defendants.

In view of the nature of this case, and as to all other recipients of public aid in the State of Illinois, this determination is made prospective as of the date of this decision; and because of the nature of this decision, no further consideration of the requests of the plaintiffs that they proceed as representatives of a class is necessary, and the same are hereby ordered stricken from their complaints.