**Ernest A. HINGLE, Plaintiff,**

v.

**Chalin O. PEREZ, individually and as President of the Parish Council of Plaquemines Parish Louisiana, Luke A. Petrovich, individually and as Commissioner of Public Safety of Plaquemines Parish Louisiana, A. L. LaFrance and Jim Hoffman, individually and as Safety Engineers of Plaquemines Parish Louisiana, Clement Betpovey, Jr. & Co., and Plaquemines Parish Louisiana through its Parish Council President Chalin O. Perez, Defendants.**

Civ. A. No. 68–2057.

United States District Court, E. D. Louisiana, New Orleans Division.

March 31, 1970.

Benjamin E. Smith, New Orleans, La., for plaintiff.

Sidney W. Provensal, Jr., New Orleans, La., for defendants.

RUBIN, District Judge:

Ernest A. Hingle, a Plaquemines Parish landowner, here seeks recompense from that Parish and several of its officials for the allegedly illegal destruction of certain property belonging to him. Plaintiff and defendant have filed cross motions for summary judgment, and defendant has moved to dismiss for lack of jurisdiction.

Plaquemines Parish Ordinance No. 63, adopted October 7, 1965, authorizes the demolition of buildings and parts of buildings upon the determination of the Parish Building Inspector that they constitute a menace to public safety. The public wreckers may proceed after posting notice on the building; they are not required to give personal notice to the property owners. The ordinance was passed as part of the Parish's effort to restore the damage wrought by Hurricane Betsy.

Around August 16, 1968, Parish employees razed a shed on Hingle's property in Port Sulphur, and removed some lumber that was piled on his land. Shortly thereafter, a private contractor engaged by the Parish dug a ditch along the edge of Hingle's property, but not in it, in order to lay a water main; the ditch was filled when the job was finished, however, and plaintiff's land was cleared of all spoil.[1]

Plaintiff contends jurisdiction of this case in federal court can be based on 28 U.S.C.A. § 1331 (diversity of citizenship) or 28 U.S.C.A. § 1332 (federal question). We need not deal with the controversy over Hingle's citizenship for purposes of diversity, because it is apparent from the evidence submitted that the cause does not involve damages amounting to more than $10,000, as required for a diversity suit. The same objection forecloses resort to § 1332, as a claim in excess of $10,000 is needed for jurisdiction under that statute, as well.

Plaintiff also asserts federal jurisdiction exists in this case under 28 U.S.C.A. § 1343(3):

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

Hingle contends that the destruction of his property without notice,[2] hearing or compensation violated the due process clause of the Fourteenth Amendment—a "right * * * secured by the Constitution of the United States"—and that he may therefore proceed under this statute without regard to jurisdictional amount.

This case is a classic invocation of the due process clause to afford substantive protection against the taking of property by the state, using summary procedure, without compensation to the owner. Plaintiff has had full opportunity to present any evidence that he, as an individual or as a member of a class, was discriminated against in the enactment or in the enforcement of Ordinance No. 63. He has offered none, and no serious claim based on a denial of equal protection of the law is asserted.

1. The private contracting firm was originally joined as a defendant, but summary judgment has already been entered in its favor.

2. In their Statements of Material Facts, plaintiff and defendants differ over whether Hingle's property was actually posted as the ordinance required. The evidence shows that Hingle was out of the state during the period the Parish claims to have posted the notices, but that he received actual notice that demolition of his building was contemplated. At any rate, the matter is not relevant to disposition of the jurisdictional question.

The primary difficulty in reading § 1343(3) as a grant of jurisdiction for this case is that such an interpretation would turn the section designed to protect civil rights into one providing an automatic federal forum for all lawsuits involving federal rights, regardless of jurisdictional amount. If that interpretation were to prevail, the principal statute creating "federal question" jurisdiction, § 1332, would be completely eclipsed.

Courts have been struggling with the overlap between the two jurisdictional enactments since Hague v. CIO, 1939, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423. In that case, while the Court found the district court had jurisdiction under the civil rights laws to enjoin interference with First Amendment rights, the Supreme Court itself was unable to offer a majority opinion explaining its result. Most often lower courts have followed the opinion of Mr. Justice Stone, 307 U.S. at 518–532, 59 S.Ct. at 971 in which he reconciles the two statutes by limiting the civil rights jurisdiction to situations where "the right or immunity is one of personal liberty, not dependent for its existence upon the infringement of property rights," Id. at 531, 59 S.Ct. at 971.

Justice Stone's formulation has been criticized in the legal literature [3] and its usefulness as a rule of thumb has been diminished as the accepted conceptions of due process and constitutionally protected personal freedom have expanded. Like the Supreme Court in *Hague,* the Fifth Circuit has presented no clear guiding principle to distinguish between the cases where one or the other jurisdictional statute applies. It has accepted § 1343(3) jurisdiction over a group of cases involving monetary damage, but it has not discarded § 1332 as a limitation on the controversies involving federal questions that can be sued on in federal court.[4]

The various authorities do demonstrate that the problem can be resolved in a particular case only by examining the facts of that case; appeals to nineteenth-century legislative history and the personal motivations of the Reconstruction Congressmen who supported the civil rights statutes are of little assistance. Interpretation of still mooted questions of federal jurisdiction today can more sensibly be focussed on the problem of the proper allocation of litigation to a suitable forum. Section 1332 remains as a Congressional directive that, in the main, federal courts should not spend their time on cases involving less than $10,000 even though federal rights are at issue. Section 1343(3) provides one of several special exceptions to that rule, where special federal jurisdiction is needed either because state courts cannot be relied on to protect certain rights with sufficient diligence or because uniformity in decision is particularly desirable.

The personal right-property right distinction, if not followed mechanically, is a fairly accurate reflection of these considerations. State courts have traditionally maintained their expertise in matters concerning property, and national uniformity in that area is neither needed nor desired. Much of the confusion surrounding § 1343(3) has developed out of the attempt to define what is a *personal* right. The Fifth Circuit, for example, has upheld § 1343 jurisdiction in a number of licensing cases, both because arbitrary denial of a

---

3. *See, e. g.,* Limiting the Section 1983 Action in the Wake of Monroe v. Pape, 1969, 82 Harv.L.Rev. 1486.

4. Compare Mansell v. Saunders, 5 Cir. 1967, 372 F.2d 573; McGuire v. Sadler, 5 Cir. 1964, 337 F.2d 902, and Hornsby v. Allen, 5 Cir. 1964, 326 F.2d 605 with Bussie v. Long, 5 Cir. 1967, 383 F.2d 766 and Hornbeak v. Hamm, M.D.Ala. 1968, 283 F.Supp. 549 (three-judge court). The differences over interpretation of § 1343(3) are ably and fully explored in the majority opinion of Judge Godbold and the dissent by Judge Johnson in *Hornbeak, supra.*

**130**

license may carry overtones of denial of equal protection and because licenses involve the personal right to pursue a particular calling although the direct injury is monetary; on the other hand, the right to be taxed by the state on the basis of equal property assessments has been held to be a property right inappropriate for § 1343(3) jurisdiction. As Judge Bell said in Bussie v. Long, 5 Cir. 1967, 383 F.2d 766, 769 (a tax equalization case), "[T]here is admittedly a fine line between" the cases.

■ The instant case is the paradigm of a property rights controversy. Louisiana state courts have provided an effective forum for the redress of the rights of owners of private property against state taking. The Louisiana Constitution, Art. I, Section 2, and the Louisiana Statutes, LSA–R.S. 19:1 et seq., provide constitutional and legislative protection for those aggrieved by state action that constitutes a taking of property. There is no allegation or evidence in this record that the Louisiana courts would not provide plaintiff with a fair hearing.[5] Dividing litigation between federal and state courts on the basis of how much money is involved may strike some critics as an unsatisfactory means of defining jurisdiction, but Congress has both the power and the duty to fix the criteria, and it has considered the amount in dispute as a desirable standard. While the jurisdictional amount remains a requirement of § 1332, the personal right-property right test proposed by Justice Stone is the most convenient yardstick for determining which federal question cases should be held to that requirement. See Eisen v. Eastman, 2 Cir., 421 F.2d 560, 1969.

For these reasons, defendants' motion to dismiss for lack of jurisdiction will be GRANTED.

---

5. If for some reason plaintiff felt he could not receive a fair hearing in the Parish whose actions he was challenging, he could move for a change of venue as provided by the Louisiana Code of Civil Procedure, LSA–C.C.P. Art. 122.