Kathy **CAMPAGNUOLO**, on her behalf and on behalf of her minor daughter Dawn Marie Campagnuolo, and all others similarly situated

v.

John **HARDER**, individually and as Commissioner of Welfare of the State of Connecticut.

Civ. No. 13968.

United States District Court, D. Connecticut.

Nov. 13, 1970.

William H. Clendenen, Jr., David M. Lesser, New Haven, Conn., for plaintiff.

James M. Higgins, Asst. Atty. Gen. of Connecticut, East Hartford, Conn., for defendant.

## RULING ON APPLICATION TO CONVENE A THREE-JUDGE DISTRICT COURT

BLUMENFELD, District Judge.

Prior to July 31, 1970, plaintiff, as the mother and supervising relative of a needy dependent child, was receiving aid under the Aid to Families with Dependent Children (AFDC) program. In June of 1970, she began fulltime employment as a secretary and was shortly thereafter notified that she was no longer eligible for AFDC benefits because of excess income. Following an evidentiary hearing in July, her benefits were terminated as of the end of that month. Defendant, who is charged with the administration of the AFDC program in Connecticut, re-lies upon a state statute, Conn.Gen.Stats. § 17–2 (1969), and a Welfare Department regulation of statewide application (Bulletin #2445) to sustain his determination of plaintiff's ineligibility. Seeking to enjoin application of the statute and regulation on the ground of their unconstitutionality, plaintiff has moved for the convocation of a three-judge district court under 28 U.S.C. § 2281.

The dispute in this case revolves around the "incentive earnings" feature of the AFDC program, 42 U.S.C. §§ 602 (a) (7) and (8). To encourage those on public assistance to accept employment where possible, the program provides that in determining the net income available to the welfare recipient each month, the first $30 and one-third of the remainder of income derived from employment shall be disregarded. 42 U.S.C. § 602(a) (8) (A) (ii); Conn.Gen.Stats. § 17–2 (1969). Moreover, in arriving at "earned income" to be disregarded, the recipient may deduct certain employment expenses from gross earnings. 42 U.S.C. § 602(a) (7); Conn.Gen.Stats. § 17–2 (1969). The calculation of this deduction provides the basis for this litigation. Plaintiff claims that § 17–2 and Bulletin #2445 require that self-employed persons be treated more favorably than employees with respect to allowable business expense deductions from gross income. The distinction, she claims, is without a rational basis and consequently denies her, an employee, the equal protection of the laws guaranteed by the fourteenth amendment.

Under the provisions of regulatory material transmitted by Bulletin #2445, employees may deduct from wages, salary and commissions, so-called "mandatory deductions—expenses of employment." Conn.Welfare Man. § 332.31 (1970). These deductions have been expressly delimited to withholding and social security taxes and, where mandatory, retirement plan payments, union dues, group life insurance, and hospital insurance for those under 65. *Id.* at § 332.32. Self-employed persons, on the other hand, may deduct from gross in-

come "the total cost of production of the income." *Id.* at § 332.31. Specifically, Mrs. Campagnuolo complains that transportation expenses, lunch costs, and expenses for work clothing are not deductible to the employee, but are counted as part of the cost of producing income and thus deductible for the self-employed. She submits in support of her claim a copy of a fair hearing decision in a case involving another welfare recipient. That decision allowed deduction of transportation expenses upon a finding that the recipient was self-employed and not an employee as she had been previously classified.

Section 17–2 of the Connecticut General Statutes requires the defendant to terminate AFDC assistance to any family of two whose total earned income (gross income less allowable deductions) exceeds $266.67 in any month. Plaintiff claims that this limitation compounds the first equal protection denial and of itself amounts to a second. Thus, the arbitrary calculation of her earned income (which results in an inflated figure vis a vis that of a similarly situated self-employed person) leads to an arbitrary termination of benefits, since others with the same amount of gross income and same degree of need will not be terminated simply because the nature of their employment allows them to take additional deductions and thus fit in under the income limitations.

Finally, plaintiff alleges that both § 17–2 and Bulletin #2445 conflict with the federal Social Security Act, 42 U.S. C. §§ 602(a)(7) and (8), and § 1396a (17)(B), and federal regulations promulgated thereunder, in a number of respects.

■■ In any case in which application is made to a single federal judge for the convocation of a three-judge district court under 28 U.S.C. § 2281, the single judge has the authority, without first convening that expanded panel, to determine the court's jurisdiction and assess the substantiality of the constitutional question presented for adjudication. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Heaney v. Allen, 425 F.2d 869 (2d Cir. 1970); Lion Mfg. Corp. v. Kennedy, 117 U.S.App.D.C. 367, 330 F.2d 833, 840–41 (1964). Even where jurisdiction is not formally challenged by a motion to dismiss, the court should examine *sua sponte* the jurisdictional grounds relied upon. Thompson v. New York Cent. R. R., 361 F.2d 137, 144–45 (2d Cir. 1966); Cover v. Schwartz, 133 F.2d 541, 546 (2d Cir. 1942), cert. denied, 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703 (1943).

This case, like so many others presenting challenges in constitutional garb to the administration of this state's welfare program,[1] requires application to a specific set of facts of the judicial gloss imposed on 28 U.S.C. § 1343(3). That statute, the jurisdictional counterpart of the Civil Rights Act, 42 U.S.C. § 1983, provides jurisdiction in the federal court, without prior satisfaction of a jurisdictional amount, for suits "to redress the deprivation, under color of any State law * * * of any right, privilege or immunity secured by the Constitution of the United States * * *." So that § 1343(3) would not eclipse 28 U.S.C. §

---

1. Since Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), upon which the following jurisdictional discussion largely depends, this judge alone has considered the following challenges to Connecticut's welfare scheme: Roberts v. Harder, 320 F.Supp. 1313 (Nov. 10, 1970); Hourigan v. Harder, Civ. 13,754 (June 5, 1970); Johnson v. Harder, 318 F.Supp. 1274 (May 15, 1970); Harrell v. Harder, Civ. 13,800 (Apr. 30, 1970); McClellan v. Shapiro, 315 F.Supp. 484 (D.Conn.1970) (three-

judge district court); Pearce v. Harder, Civ. 13,747 (Mar. 18, 1970); Middagh v. Harder, Civ. 13,661 (Mar. 10, 1970); Bourque v. Shapiro, 319 F.Supp. 729 (Jan. 28, 1970); and Russo v. Shapiro, 309 F.Supp. 385 (D.Conn.1969). In addition to the instant case, two others are now pending. All of these cases except *Harrell* and *Pearce* (both disposed of by stipulated injunctions) have required the jurisdictional analysis mandated by *Eisen.*

1331(a), which provides federal question jurisdiction in cases where more than $10,000 is in controversy, courts have restricted application of § 1343(3) to cases where "the right or immunity [allegedly infringed] is one of personal liberty, not dependent for its existence upon the infringement of property rights." Hague v. C.I.O., 307 U.S. 496, 518, 531, 59 S.Ct. 954, 971, 83 L.Ed. 1423 (1939) (opinion of Mr. Justice Stone). This circuit has recently adopted the Stone formulation in Eisen v. Eastman, 421 F.2d 560, 566 (2d Cir. 1969), and McCall v. Shapiro, 416 F.2d 246, 250 (2d Cir. 1969). *See also,* National Land & Inv. Co. v. Specter, 428 F.2d 91, 98–100 (3d Cir. 1970).

Application of the Stone formulation to constitutional challenges to a state's administration of its welfare program presents particular difficulty. Eisen v. Eastman, *supra* 421 F.2d at 566 n. 10, suggests that the formula is a substantial but not insurmountable obstacle to federal jurisdiction over those challenges. Since Eisen v. Eastman, the Supreme Court, without an extended discussion of jurisdiction (the Court has apparently not considered the scope of § 1343(3) since Hague v. C.I.O. in 1939), has decided on the merits a number of such challenges. *See* Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed. 561 (1970); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). *And see,* Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) decided before *Eisen.*

The broadest statements relating to jurisdiction are from the Court's ruling in Rosado v. Wyman. At 397 U.S. 403, 90 S.Ct. 1213, the Court stated:

"[O]nce petitioners filed their complaint alleging the unconstitutionality of [a New York Welfare statute], the District Court * * * was properly seised of jurisdiction over the case under §§ 1343(3) and (4) of Title 28 * * *."

Later, it noted that "we find not the slightest indication that Congress meant to deprive federal courts of their traditional jurisdiction to hear and decide federal questions in this field." *Id.* at 422, 90 S.Ct. at 1223.

The absence of specific reference by the Court to *Hague* however, leads me to conclude that the Court has not *sub silentio* abandoned the Stone formula. Moreover, in light of *Eisen,* if any such conclusion is to be drawn, it must come first from the Court of Appeals. In the meantime, this court must endeavor to apply the formula to the facts before it.

In applying the Stone formula to welfare cases, this court has taken the position that a right of personal liberty is not infringed by the denial of a constitutional safeguard unless as a consequence of that denial the plaintiff's subsistence is put at stake.[2] Support for that theory is drawn from an analysis of the common denominator in welfare cases in which § 1343(3) jurisdiction has been sustained. *See, e.g.,* Dandridge v. Williams, *supra,* 397 U.S. at 485, 90 S.Ct. at 1162 (public assistance "involves the most basic economic needs of impoverished human beings"); Goldberg v. Kelly, *supra,* 397 U.S. at 264, 90 S.Ct. at 1018 (state's action "may deprive an eligible recipient of the very means by which to live" or render his situation "immediately desperate"); Shapiro v. Thompson, *supra,* 394 U.S. at 627, 89 S.Ct. 1322, at 1327 (denial of aid "upon which may depend the ability of the families to obtain the very means to subsist"); King v. Smith, *supra,* 392 U.S. at 334, 88 S.Ct. at 2142 ("destitute children * * * flatly denied * * * assistance"). This approach is not inconsistent with Judge Friendly's suggestion in *Eisen, supra,* 421 F.2d at 564, that what was involved in *King* was the liberty of the needy children "to grow

up with financial aid for their subsistence." Until further instructions from the Court of Appeals, therefore, I will continue to follow that approach in testing for § 1343(3) jurisdiction in this area.

 Not every diminution of welfare benefits allegedly caused by unconstitutional statutes or conduct will confer federal jurisdiction. Nor will every complete termination of benefits, where termination does not imperil subsistence. In the instant case, the pleadings establish that the subsistence of Mrs. Campagnuolo and her child has not been placed in jeopardy by operation of the allegedly unconstitutional statute and regulation. Her termination was grounded on the receipt of other income deemed sufficient by the state to meet subsistence needs,[3] and the plaintiff does not dispute the receipt or amount of that income (but only the calculation of how much should be charged against her in the determination of her needs under the program). It cannot be said that plaintiff's condition is "immediately desperate" or that she is faced with "brutal need." Like the plaintiffs in Johnson v. Harder, 318 F.Supp. 1274 (D.Conn. May 15, 1970), and Bourque v. Shapiro, 319 F.Supp. 729 (D.Conn. Jan. 28, 1970), Mrs. Campagnuolo does not claim that income other than AFDC benefits is not available to her.[4] *Compare* Hourigan v. Harder, Civ. 13,754 (D.Conn. June 5, 1970). Like them, she disputes only the commissioner's method of calculating her need. Whether the claimed injury from this kind of miscalculation is but a diminution in the amount of welfare which would be received if plaintiff's position were sustained, or is such that it causes plaintiff to be removed from the rolls

altogether does not affect the quality of the right allegedly infringed.

 The right to have need calculated and eligibility for public assistance determined without constitutional infirmities is not, where subsistence is not at stake, a right of personal liberty. It involves only the infringement of property rights and without an allegation of jurisdictional amount cannot be entertained in the federal court. Accordingly, the case must be dismissed for lack of jurisdiction[5] without reaching the motion to convene a three-judge district court.

So ordered.

---

3. The commissioner is directed by statute to grant AFDC aid in such amount "as is needed in order to * * * support * * * dependent * * * children * * * in health and decency * * *." Public Act 730 § 19 (1969).

4. She does, of course, dispute the amount of net income available to meet her needs

after deducting business expenses, but not the gross income available to her from employment before the deduction.

5. The claimed conflict between the federal and state welfare statutes and regulations does not provide an independent ground for federal jurisdiction. McCall v. Shapiro, *supra*, 416 F.2d at 248–49.