Phyllis L. HUNT et al., Plaintiffs,

v.

James EDMUNDS, Individually and as Director of the Ramsey County Welfare Department, et al., Defendants.

No. 5–70 Civ. 36.

United States District Court,
D. Minnesota,
Fifth Division.

April 7, 1971.

Legal Aid Society of Minneapolis, by Luther A. Granquist, Minneapolis, Minn., Legal Services Project, Cass Lake, by Warren E. Strom, Cass Lake, Minn., for plaintiffs.

Craig R. Anderson, Asst. Atty. Gen., St. Paul, Minn., for defendants.

Before BRIGHT, Circuit Judge, and NEVILLE and LARSON, District Judges.

NEVILLE, District Judge.

The original motion for convocation of a three-judge district court under 28 U.S.C. §§ 2281 and 2284 [1] alleged that a certain statute [2] and regulations [3] of statewide application are unconstitutional in light of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), insofar as they "permit suspension or withholding of public assistance payments under the categorical aid programs without notice and an opportunity to be

---

1. Filed October 19, 1970, and argued before the original single-judge court in Duluth on October 26, 1970.

2. Minn.Stat. § 256.78.

3. All welfare regulations are collected in the Minnesota Department of Public Welfare's "Public Welfare Manual". Specifically challenged here in the original papers were sections VIII–6312.03 and 6317.

heard." [4] The Court also understood this challenge to run to the constitutionality of Policy Bulletin No. 15, a directive of the State Commissioner to County Welfare Directors dated June 10, 1970, and apparently effective on the date of the reduction of assistance benefits in this case. The final paragraph of that Bulletin read:

"It is likely that within the next two or three months the pre-termination procedure outlined in this bulletin will also be ordered by HEW to be applied to a situation in which the recipient's grant is not being terminated but is being *reduced*. Notwithstanding, we wish to have some experience with the procedure as it applies to terminations or suspensions only, before getting into the much broader area of reductions, where the volume of cases will be considerably greater."

The originating judge read this to be a mandatory edict to County authorities that they deny pre-reduction notice and hearing.

Policy Bulletin No. 15 was issued in the wake of Goldberg v. Kelly, *supra*, and Moldenhauer v. Provo, 326 F.Supp. 480 (D.Minn. 1970, 4–70 Civ. 218), a decision on motion for preliminary injunction holding Minnesota welfare statutes and regulations unconstitutional under Goldberg v. Kelly in cases of terminations only. This Bulletin, apparently an interim directive having the force and effect of law as a regulation promulgated under statutory authority delegated to the Commissioner, was filed as an exhibit to the State's Answer. Before November 21, 1970, it was the sole implementation of *Goldberg* existing on the date of this plaintiff's reduction of grants in aid.

On December 17, 1970, (subsequent to the appointment of the three-judge court) plaintiffs filed a brief in support of their positions, accompanied by a copy of certain sections [5] of the Public Welfare Manual, revised as of September 21, 1970. These regulations appear to be designed to supersede the aforementioned Policy Bulletin No. 15. While the new regulations require the procedural safeguards enunciated in *Goldberg* for terminations and suspensions, they do not apply to reductions. Furthermore, they do not include a provision similar to that of Policy Bulletin No. 15 which mandatorily prohibited County Boards from extending *Goldberg* rights to recipients subject to reductions.

In short, Minnesota state law in its present form does not expressly deny recipients such rights in assistance payments reduction cases. Nothing in the current Public Welfare Manual affirmatively prohibits a County Board from affording a recipient notice and an opportunity to be heard prior to the reduction of his grant. The court notes, further, that HEW has promulgated regulations, effective April 14, 1971, which will require that states implement procedures similar to those imposed by *Goldberg* in reduction cases as well. 36 F.R. 3034–3035 (February 13, 1971), 45 C.F.R. § 205.10.

In this posture, the court is required to reconsider its action in requesting the convocation of a three-judge court. The judges are of the opinion that the case is now inappropriate for decision by a three-judge court and should be disposed of by the original single-judge court.[6]

28 U.S.C. § 2281 reads as follows:

"An interlocutory or permanent injunction restraining the enforcement,

---

4. Plaintiff's brief in support of motion for a Temporary Restraining Order, page 2.

5. Sections VIII–6400–6460.

6. The most obvious consequence of this decision is that a direct appeal to the U. S. Supreme Court under 28 U.S.C.

§ 1253 will not lie. There is some authority for the proposition that challenge of a mere "policy directive" as distinguished from a *binding* regulation is not alone sufficient to require convocation of a three-judge court in any event. See Roberge v. Philbrook, 313 F.Supp. 608, 616 (D.Vt.1970), and cases cited therein.

operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

The present thrust of plaintiff's complaint is that Cass County Minnesota officials denied her certain constitutional rights by refusing to afford her notice and hearing prior to the reduction of her grant. The denial of such procedures is not now required by applicable statutes and regulations as embodied in the aforesaid Manual. Those laws would clearly permit County authorities to extend to the plaintiff the privileges she seeks.

As the First Circuit has said, in Benoit v. Gardner, 351 F.2d 846 (1st Cir. 1965), at 848, § 2281 "does not encompass injunctions sought on the ground that a valid statute or order is being executed in a manner prejudicial to constitutional rights." A three-judge court is not required (nor, in fact, permitted) in situations where vindication of alleged constitutional rights of which plaintiff claims there has been a violation can be effected without invalidating the statute itself. Ex Parte Bransford, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249 (1940); Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941); American Federation of Labor v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873 (1946); Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964); Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967); Bussie v. Long, 383 F.2d 766 (5th Cir. 1967); Wright, Federal Courts (2nd Ed., 1970), Chapter 8, § 50, page 190.

Griffin, *supra*, is particularly analogous to the instant case in this respect.

Subsequent to the *Brown* school desegregation decision, the Virginia General Assembly had passed legislation permitting but not requiring county authorities to order the closing of public schools and to channel state education funds instead to private (segregated) schools. When Prince Edward County took such action a suit was brought seeking a declaration that its action was unconstitutional under *Brown*. When the case reached the Supreme Court, it was held *inter alia* that the challenge of action taken by the County on the basis of a state statute which merely permitted it did not merit the convocation of a three-judge court:

"While a holding as to the constitutional duty of the Supervisors and other officials of Prince Edward County may have repercussion over the State and may require the District Court's orders to run to parties outside the county, it is nevertheless true that what is attacked in this suit is not something which the State has commanded Prince Edward to do—close its public schools and give grants to children in private schools—but rather something that the county with state acquiescence and cooperation has undertaken to do on its own volition, a decision not binding on any other county in Virginia. Even though actions of the State are involved, the case, as it comes to us, concerns not a state-wide system but rather a situation unique to Prince Edward County. We hold that the single district judge did not err in adjudicating the present controversy." 377 U.S. at 228, 84 S. Ct. at 1231.

Goldberg v. Kelly, *supra*, did not specifically address itself to the above question.

Several recent cases in the welfare field illustrate, however, situations in which the three-judge court is clearly required. In King v. Smith, 392 U.S. 309, 88 S.Ct. 821, 19 L.Ed.2d 869 (1968), the plaintiffs attacked Alabama state welfare regulations which required that local authorities deny AFDC benefits to any otherwise eligible applicant if they determined that the applicant was living

with a "substitute father". A three-judge court was convoked to consider this challenge because the alleged infringement of constitutional right was mandated by the regulations, and was not merely the result of an exercise of discretion by some official acting under a facially valid regulation. Likewise, in Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), a three-judge court was required in an action brought to invalidate a state statute which required welfare authorities to deny categorical assistance benefits to a certain class of recipients. See also Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970).

■ In the instant case, plaintiffs do not contend that to meet *Goldberg*, state statutes and regulations must be rewritten expressly to require local welfare authorities to give notice and hearing before reducing a recipient's grant. Those laws already permit such procedures, and thus cannot be called facially unconstitutional on that account. Rather, the plaintiffs are concerned with the practice of denying such procedural safeguards, a practice which is permitted but not required by the statutes and regulations they purport to challenge. The case does not require a three-judge court. Crow v. California Dept. of Human Resources, 325 F.Supp. 1314 (N.D.Cal. 1970); Merriweather v. Burson, 325 F.Supp. 709 (N.D.Ga.1970); Torres v. New York State Dept. of Labor, 318 F.Supp. 1313, 1318–1324 (S.D.N.Y.1970); McQueen v. Druker, 317 F.Supp. 1122 (D.Mass.1970); Java v. California Dept. of Human Resources Development, 317 F.Supp. 875 (N.D.Cal.1970); Dullea v. Ott, 316 F.Supp. 1273 (D.Mass.1970); Banner v. Smolenski, 315 F.Supp. 1076 (D.Mass.1970).[7]

---

7. *Contra,* Cooper v. Laupheimer, 316 F.Supp. 264 (E.D.Pa.1970); Messer v. Finch, 314 F.Supp. 511 (E.D.Ky.1970); Lage v. Downing, 314 F.Supp. 903 (D. Iowa 1970); Sims v. Juras, 313 F.Supp. 1212 (D.Or.1969); Caldwell v. Laupheimer, 311 F.Supp. 853 (E.D.Pa.1969); Goliday v. Robinson, 305 F.Supp. 1224 (M.D.Ill.1969).

## OPINION ON THE MERITS

NEVILLE, District Judge.

The plaintiffs, Phyllis L. Hunt, and seven of her minor children are recipients of grants under the program of Aid to Families with Dependent Children, authorized by 42 U.S.C. § 601 et seq. and Minnesota Statutes § 256.73 et seq. On September 3, 1969, she and her children moved from Ramsey County, Minnesota, to Cass County, Minnesota. Since that time they have resided on Indian trust land, the legal title to which is held by the Federal Government. Financial responsibility for the family's grant remained with Ramsey County for a year, or until October 1, 1970, but the grant was administered or serviced by the Cass County Welfare Department from the date on which the plaintiffs moved to Cass County.

Prior to moving to Cass County, Mrs. Hunt made arrangements with a local lumber company for the purchase of building materials in the original amount of $420 with which to build or refurbish a home in Cass County. Ramsey County Welfare authorities had originally authorized a shelter allowance grant in the amount of $100 per month. When she moved to Cass County, that component of her total AFDC grant was reduced to $70 per month, the maximum shelter allowance available by law to recipients residing in Cass County.

In December of 1969, Mrs. Hunt arranged for the purchase of additional building materials costing some $2,100. Apparently she considered Ramsey County's original authorization effective to include this additional amount.

In March of 1970, Ramsey County authorities reduced Mrs. Hunt's total AFDC grant effective April 1, 1970, by terminating the $70 shelter allowance component, without affording her an op-

portunity to be heard prior to the reduction. Subsequent to the commencement of this action, and apparently in anticipation of Cass County's succession to financial responsibility for her grant on October 1, 1970, Ramsey County reinstated her $70 per month shelter allowance with $70 per month restoration for the months between the reduction and the decision to reinstate.[1]

In August 1970, at the request of the Cass County Welfare Department (which anticipated its approaching financial responsibility for plaintiffs' grant), Mrs. Hunt filled out a new AFDC application and requested a $70 per month shelter allowance.

On September 17, 1970, plaintiff received a letter from the Cass County Welfare Department informing her that the Cass County Welfare Board, following the original decision of the Ramsey County authorities, had declined to approve a shelter allowance for the payments she contemplated. The letter also stated that *the Board's decision was based on the fact that plaintiff did not receive prior approval from the welfare authorities before going ahead with the transaction*, and that if the decision was not agreeable to her she could file an appeal. Plaintiffs' attorney promptly telephoned defendant Director of the Cass County Welfare Department but was denied a request for a hearing prior to the effective date of the reduction by $70.00.

At no time was plaintiff Phyllis Hunt afforded an opportunity for a hearing on the continued eligibility of herself and her children for the AFDC grant, including a shelter allowance, before an impartial hearing examiner nor anyone else appointed to hear evidence as to facts or arguments as to the law prior to the effective date of said reduction.

Since October 1, 1970, plaintiffs have been receiving a monthly AFDC grant in the amount of $324. This grant would be increased by $70 per month if welfare authorities had decided that they were entitled to a shelter allowance. On November 23, 1970, a State Appeals Referee upheld the action of the Cass County Welfare Board on the merits of the reduction. Damages in this action are thereby limited to $70 per month for the two months of October and November, or $140 total. Plaintiffs' counsel states that they make no further claim.

Plaintiffs have asserted that the court has jurisdiction under 28 U.S.C. § 1343 (3) and (4), the jurisdictional counterparts of 42 U.S.C. § 1983, which do not require $10,000 in controversy.[2]

The court recognizes that the Second Circuit in what it considered to be a correct application of Hague v. Committee for Industrial Organization, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), recently held that the right of a welfare recipient to be afforded procedural due process and equal protection by welfare authorities may not in every case be a "right, privilege or immunity" within the intendment of 42 U.S.C. § 1983. See McCall v. Shapiro, 416 F.2d 246 (2d Cir. 1969). *Cf.* Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969); Weddle v. Director, Patuxent Institution, 436 F.2d 342 (4 Cir., 1970); Hingle v. Perez, 312 F. Supp. 127 (E.D.La.1970); Lynch v.

---

1. This reinstatement being undisputed in the record, the claim against Ramsey County defendants has become moot and is dismissed.

2. 28 U.S.C. § 1343 reads, in pertinent part:
   "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
   * * *
   (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."
   (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

Household Finance Corp., 318 F.Supp. 1111 (D.Conn.1970). This holding has been applied to bar several recent welfare suits in the District of Connecticut. Kelley v. Shapiro, 305 F.Supp. 855 (D.Conn.1969); Roberts v. Harder, 320 F.Supp. 1313 (D.Conn.1970); Campagnuolo v. Harder, 319 F.Supp. 414 (D.Conn.1970); Johnson v. Harder, 318 F.Supp. 1274 (D.Conn.1970).[3]

In Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. 1970), on the other hand, the same Second Circuit found § 1343(3) jurisdiction in a case challenging the practice of denying Public Housing tenants notice and hearing prior to their eviction, distinguishing *McCall* and *Eisen*. The court characterized the plaintiffs' complaint as one alleging "deprivations of procedural due process, a civil right, which may ultimately lead to the loss of a property right, to wit, tenancy in public housing." 425 F.2d at 864.

Notwithstanding these decisions in the Second Circuit, this court must heed the Supreme Court's direct statement in Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), which was decided subsequent to *McCall* and *Eisen*, *supra*:

> "Once petitioners filed their complaint alleging the unconstitutionality of [a certain section of the New York Social Services Law], the District Court sitting as a one-man tribunal, was properly seized of jurisdiction over the case under §§ 1343(3) and (4) of Tittle 28."

397 U.S. at 403, 90 S.Ct. at 1213. Likewise, in Goldberg v. Kelly, although the Supreme Court's opinion does not comment on the original court's jurisdictional basis, that District Court clearly determined that § 1343(3) and (4) gave it the power to decide the case. Kelly v. Wyman, 294 F.Supp. 893 (S.D.N.Y.1968).

See also King v. Smith, *supra*; Dullea v. Ott, 316 F.Supp. 1273 (D.Mass.1970); McClellan v. Shapiro, 315 F.Supp. 484 (D.Conn.1970); Roberge v. Philbrook, 313 F.Supp. 608 (D.Vt.1970).

■ In this case, the plaintiffs allege the deprivation not of merely $140, but of constitutional rights to procedural due process, a "right, privilege or immunity" protected under 42 U.S.C. § 1983. Jurisdiction therefore exists by virtue of 28 U.S.C. § 1343(3) and (4) notwithstanding the absence of $10,000 in controversy.

■ Plaintiffs have made a motion to appear on behalf of all other welfare recipients similarly situated as representatives of that class pursuant to Fed. R.Civ.P. Rule 23. The court has misgivings as to the propriety of such a course, and exercises its prerogative under Rule 23(c) to deny the request. In many welfare cases where the face of a statute or regulation is challenged, all recipients subject to the operation of the statute are interested in the outcome and the decision often becomes a precedent. In this case, whatever the precedential value, the administrative treatment of this plaintiff is all that is before the court. Proper consideration of that question has required a very specific analysis of the circumstances of her grant's reduction, and the court's holding has been accordingly limited. On that basis, the motion to proceed as a class action is denied.

Coming to the merits, the United States Supreme Court last year ruled that the Due Process clause of the Fourteenth Amendment requires that a welfare recipient be given notice of the basis for any proposed termination or suspension of his grant and an opportunity to be heard prior to such action. Goldberg v. Kelly, *supra*, and Wheeler v. Montgomery, 397 U.S. 280, 90 S.Ct. 1026, 25

---

3. But see Russo v. Shapiro, 309 F.Supp. 385 (D.Conn.1969), in which Judge Blumenfeld, author of *Kelley*, *Roberts*, *Johnson*, and *Campagnuolo*, apparently felt compelled by the Supreme Court's decision in King v. Smith, 392 U.S. 309,

88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), to find that 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) supported an action challenging certain Connecticut welfare regulations on Equal Protection grounds.

L.Ed.2d 307 (1970). The issue of a mere reduction *vis a vis* a termination was not faced. In Moldenhauer v. Provo, 326 F.Supp. 480, 4–70 Civ. 218 (D.Minn. 1970), this court held on a motion for preliminary injunction that the procedures then followed by Minnesota welfare authorities in terminations and suspensions of AFDC grants fell short of the *Goldberg* requirements. Subsequently, on September 21, 1970, regulations were adopted to cover terminations and suspensions. Public Welfare Manual VIII–6400 et seq.

Since *Goldberg*, several courts have struck down local procedures for the termination or suspension of AFDC grants. See, Moldenhauer v. Provo, *supra*; Caldwell v. Laupheimer, 311 F. Supp. 853 (E.D.Pa.1969); Sims v. Juras, 313 F.Supp. 1212 (D.Or.1969); Lage v. Downing, 314 F.Supp. 903 (S.D.Iowa 1970); Pack v. Dietz, 455 S.W.2d 575 (Ky.1970); Camerena v. Department of Public Welfare, 106 Ariz. 30, 470 P.2d 111 (1970). Similarly, at least two cases have extended *Goldberg* to cover the termination or suspension of unemployment compensation benefits. Java v. California Dept. of Human Resources Development, 317 F.Supp. 875 (N.D.Cal.1970); Crow v. California Dept. of Human Resources, 325 F.Supp. 1314 (N.D.Cal. 1970). *Goldberg* was also applied, with appropriate modification as to the specific procedures required, in a recent case challenging the denial of notice and hearing prior to the decision to deny current recipients additional requested grants. Banner v. Smolenski, 315 F. Supp. 1076 (D.Mass.1970). Finally, several courts have extended *Goldberg* to invalidate procedures whereby public housing tenants have been evicted without prior notice and hearing, where eviction has been based on a determination of fact, *e. g.*, bad conduct or disqualification by reason of increased income. Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. 1970); McQueen v. Druker, 317 F.Supp. 1122 (D.Mass.1970); Williams v. White Plains Housing Authority, 62 Misc.2d 613, 309 N.Y.S.2d 454 (1970).

■ Goldberg v. Kelly, and its progeny indicate that in certain circumstances the due process clause requires that a welfare recipient be given an opportunity to be heard on underlying evidentiary issues prior to an administrative decision that would adversely affect his ability to subsist by contemporary standards. This procedural requirement attaches whenever (1) the recipient is faced with the prospect of being relegated to a condition of "brutal need" which prospect justifies demanding a high degree of accuracy from the original decision-maker, and (2) the decision turns on the resolution of an issue on which the recipient himself may have something to add in an evidentiary way, so that the decision-maker will have a more complete array of information before him.[4]

The Supreme Court has expressly reserved ruling on the question of whether pre-reduction notice and hearing are constitutionally required in some or all cases,[5] but the aforementioned two criteria, which guided the Supreme Court in *Goldberg*, would seem to apply in the reduction context as well.

■ It does not require much argument in the present case that for eight people a reduction of $70 per month from

4. The Supreme Court in Goldberg v. Kelly, *supra*, 397 U.S. 254, at page 268, note 15, 90 S.Ct. 1011 at page 1020, appears to have qualified its decision as follows:
"This case presents no question requiring our determination whether due process requires only an opportunity for written submission, or an opportunity both for written submission and oral argument, where there are no factual issues in dispute or where the application of the rule of law is not intertwined with factual issues. See FCC v. WJR, 337 U.S. 265, 275–277, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949)."

5. Daniel v. Goliday, 398 U.S. 73, 90 S.Ct. 1722, 26 L.Ed.2d 57 (1970), vacating judgment of the District Court (reported sub nom. Goliday v. Robinson at 305 F. Supp. 1224 (N.D.Ill.1969)) and remanding for consideration of the reduction problem in light of Goldberg v. Kelly and Wheeler v. Montgomery.

$394 to $324 is such as materially to affect their ability to subsist. The concept of "brutal need" is not limited to termination or suspension, but may as well be applicable to reductions, at least a substantial one such as here.[6] Two courts which have considered the reduction issue have recognized that the applicability of Goldberg v. Kelly depends also upon whether the issues underlying the determination to reduce are of such a nature that affording the recipient an opportunity to be heard on the facts might conceivably contribute to the accuracy of the original decision. In Merriweather v. Burson, 325 F.Supp. 709 (N.D.Ga. 1970) (2 CCH Poverty Law Reporter 11,-386), the court limited its application of *Goldberg* to reduction cases which turn on issues of fact:

> "A common-sense view of the spirit of the *Goldberg* decision seems to indicate a desire to prevent a unilateral factual determination on the part of welfare officials that a particular recipient is ineligible for benefits, in view of the possibility that a determination thus made may be disputed or erroneous. This view necessarily implies that where a reduction or termination is not thus grounded on particular facts relating to an individual recipient or assistance group, there is no need for an evidentiary hearing. Thus, where across-the-board cuts in funding necessitate wholesale reductions in benefits or changes in other programs such as social security benefits result in 'automatic' reductions or terminations, it would be a useless expenditure of money to hold hearings at the request of any number of recipients opposed to reductions dictated by the state or federal legislature,

rather than by the facts governing eligibility of particular recipients."

On the question of presenting factual information to an impartial hearing examiner, the issue underlying the determination to reduce is of such a nature here that affording plaintiffs an opportunity to be heard on the facts before a reduction is ordered might affect the decision to be made. If the only reduction had been from $100 to $70 per month solely because of the move to Cass County where generally a lower shelter allowance obtained, arguably a prior to reduction notice and hearing might not be necessary. Here however the entire shelter allowance was abrogated and Goldberg v. Kelly required a pre-reduction notice and chance to be heard in order to comport due process to plaintiffs.

---

6. See Rothstein v. Wyman, 303 F.Supp. 339 (S.D.N.Y.1969), vacated on other grounds, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970), in which the District Court observed (at page 348): "There remains a difference of approximately $4 to $5 per person between the levels of the two schedules. While this may seem minor to most citizens,

it is of crucial importance to the recipients here * * *. To an indigent person now receiving approximately 90¢ per day for food, an additional 15¢ per day can hardly be described as *de minimus*." See also Merriweather v. Burson, 325 F. Supp. 709 (N.D.Ga.1970).