John C. Marbach, J.
Petitioner brings an article 78 proceeding seeking to prohibit respondent, The White Plains Housing Authority, from evicting petitioner unless petitioner is afforded a full and fair hearing prior to the termination of her tenancy. Petitioner also seeks a determination that the termination of petitioner’s tenancy is contrary to law. Petitioner has been served with a notice to terminate her tenancy dated October 30, 1969. The facts are as follows:
Petitioner and her husband executed a lease agreement with respondent on April 1, 1965. The lease agreement is the standard month-to-month tenancy for low income housing developments throughout this State. It provides, in paragraph 3, for termination upon one month’s written notice by either party. Petitioner resided in her apartment with her three children. Her husband does not live with her, and her husband has stated that he is in the process of getting a divorce. On April 29, 1969, the Authority sent a letter to petitioner advising her that acts and conduct on the part of members of her household constituted a breach of her lease agreement and requested that she appear before the Authority Review Board on May 7,1969.
Section 1627-7.2 of the Rules of the State Division of Housing and Community Renewal (9 NYCRR 1627-7.2, added Nov. 29, 1968), sets out standards of desirability for low income housing tenants. The Authority Board of Review was established pursuant to section 1627-7.3 (added Nov. 29, 1968). These sections were added after the decision in Matter of Vinson v. Greenburgh Housing Auth. (29 A D 2d 338 [2d Dept., 1968]). Vinson hold that a housing authority cannot arbitrarily deprive tenants of their right to continue occupancy through the exercise of a contractualxprovision to terminate the lease. The actions of a *615 housing authority need not rest on mere whim or caprice but must be predicated on a reasonable ground for said termination.
Subdivision (a) of section 1627-7.3 of the Regulations establishing an Authority Board of Review provides that the Review Board shall consist of three members of the Authority to be appointed by the Chairman. Subdivision (b) provides for review of appeals of an administrative authority ruling or finding of ineligibility for admission or continued occupancy. The review procedure is initiated by written appeal for a hearing within 30 days of the ruling or finding of ineligibility. Petitioner may appear by counsel or other qualified representative. Subdivision (c) provides that a decision of the board is final except for review by appropriate judicial proceedings. If the Board of Review cannot agree on a decision, the matter is remanded for a hearing before all the members of the Authority. A decision of a majority of the members of the Authority has the same effect as a decision by a majority of the Review Board. Subdivision (d) provides for minutes to be taken of the meetings of .the Review Board. Subdivision (e) states that a written demand for review shall not affect any legal action taken by the Authority, but the Authority shall not evict any tenant whose appeal has not been finally determined. The order to show cause staying the eviction pending a decision by this court was signed on January 19, 1970.
Petitioner was also advised by the letter of April 29, 1969, that she had a right to be represented by counsel or any other representative of her choice to protect her interests. She appeared on May 7,1969, and was not represented by counsel or anyone else. Her husband also appeared.
The Board of Review consisted of the Chairman, Vice Chairman and another member of the Authority. Mrs. Williams and her husband stated they understood they had a right to counsel or anyone else to represent them. Mrs. Williams and the Review Board discussed the fact that unauthorized parties were living in the apartment, in particular her brother who had recently been released from jail. Mrs. Williams related the problems she was having with her stepson relating to general housekeeping and noise which annoyed her and other tenants. A son-in-law of another tenant apparently had a key to the apartment and went in and out of Mrs. Williams ’ apartment at will.
Mr. Williams stated that Mrs. Williams is expecting a child which is not his. He stated that Mrs. Williams and Ms son never got along but feels the son is better off living in the apartment than somewhere else. Mr. Williams could not be said to have been a witness in his wife ?s behalf.
*616 The Board of Review found that the family is undesirable on the grounds that (1) unauthorized persons have lived in the apartment for extended periods of time, and although they purported to pay board to the leaseholders, the rental for the apartment could not be evaluated on the basis of the aggregate income of the occupants; (2) the occupants and their visitors are an annoyance to other tenants, and the apartment is maintained in such a manner that the boy’s room is a fire hazard; and (3) that Mrs. Williams ’ pregnancy by a man other than her husband constitutes immoral behavior. Mrs. Williams was then served the notice to vacate on October 30, 1969.
Petitioner contends that (1) the Authority must have reasonable grounds in order to terminate the lease; (2) a determination that reasonable grounds exist can only be made after a hearing which complies with Federal and State requirements of due process and equal protection of laws; (3) if the Authority does not afford tenant a hearing with proper procedural safeguards, then a de novo hearing must be held by a court.
The Authority argues (1) that it has afforded a full and fair hearing pursuant to section 1627-7.3; (2) that petitioner’s concealment of earnings is a fraud upon the taxpayers of the State of New York, in violation of the section 1627-7.2 regulation relating to standards of desirability; and (3) that the procedure followed by it was in all respects proper.
This court agrees with the White Plains Housing Authority that it proceeded in accordance with existing regulations. However, the regulations governing the hearing afforded petitioner by the Authority did not meet the constitutional standards necessitated by the requirements of due process of law.
One of the best expositions of general legal principles applicable to low income housing is contained in the majority opinion of Mr. Justice Hopkins in Matter of Vinson v. Greenburgh Housing Auth. (29 A D 2d 338, supra [2d Dept., 1968]). Low rent housing is recognized by our Constitution as a proper governmental function (N. Y. Const., art. XVIII). Our State, in its Public Housing Law, has recognized that low rent housing is a human need to be satisfied through governmental action and, in pursuit of this objective, has created by specific statutory provisions the structure of the relationship between the Authority and its tenant. Due to its governmental aspects, the Authority is not the ordinary landlord, nor is the lessee the ordinary tenant (see Public Landlords and Private Tenants: The Eviction of “ Undesirables ” from Public Housing Projects, 77 Yale L. J. 988-994, 996-997 [1968]). The Authority’s interest in *617 property is in its usefulness as a tool of national and State housing policies.
The tenant’s need for decent low rent housing is subject only to their compliance with reasonable regulations and the payment of rent. This doesn’t mean, of course, that a public authority is powerless to evict a tenant. It may do so if the tenant’s conduct is dangerous, destructive or harmful to others, but its eviction must not be arbitrary or based upon mere whim or caprice.
Once the State has recognized and acknowledged that low income housing is a proper governmental function, then the function, like other governmental functions, is subject to constitutional mandates. Foremost among our constitutional mandates is that a citizen may not be deprived of property without due process of law. (Rudder v. United States, 226 F. 2d 51, 53.) ,
It can no longer be disputed that due process of law extends to those situations where a citizen may be deprived of life, liberty or property whether the proceeding be judicial, administrative or executive in nature. (Stuart v. Palmer, 74 N. Y. 183, 190-191; Matter of Vinson v. Greenburgh Housing Auth., supra; Ruffin v. Housing Auth. of New Orleans, 301 F. Supp. 251 [1969].) This is rooted in the fundamental concept that the essence of due process is ‘‘ the protection of the individual against arbitrary action”. (Ohio Bell Tel. Co. v. Public Utilities Comm., 301 U. S. 292, 302; Slochower v. Board of Educ., 350 U. S. 551, 559.) Due process requires that not only evictions but also selections for public housing must be made in accordance with reasonable and ascertainable standards. (Holmes v. New York City Housing Auth., 398 F. 2d 262, 265 [2d Cir., 1968] ; Colon v. Tompkins Square Neighbors, 294 F. Supp. 134 [S. D. N. Y., 1968].) Once it has been established that due process standards should apply, the question arises what constitutes due process in this type of proceeding.
On January 13, 1969, the United States Supreme Court in Thorpe v. Housing Auth. (393 U. S. 268) decided that it is essential that a tenant of a low rent housing project be advised of the reason for his eviction and be given an opportunity to make such a reply or explanation as he might wish. It specifically did not decide the question before this court of petitioner’s right to a hearing that comports with the requirements of due process.
On March 23, 1970, the United States Supreme Court decided Goldberg v. Kelly and Wheeler v. Montgomery (38 U. S. Law Week 4223, 4230, 4231). The question for decision in Goldberg and its companion case was whether a State which terminates *618 public assistance payments to a particular recipient without affording him the opportunity for an evidentiary hearing prior to termination denies the recipient procedural due process in violation of the due process clause of the Fourteenth Amendment. The fact situation and the majority rationale in Goldberg apply to the instant action since the termination of a home relief public assistance program is similar in many respects to the termination of tenancy of a low income housing tenant. The public policy objectives involved are similar, and the question of a due process evidentiary hearing before the termination of benefits is identical to the case at bar.
A low income housing tenant who is evicted is condemned to suffer a grievous loss (see Anti-Fascist Comm. v. McGrath, 341 U. S. 123, 168 [1951]). The plight of the poor in securing adequate housing is well known in our State and Nation. Housing, like food and clothing, is one of the essentials of human existence. The government has recognized that important public policy interests are promoted by low rent public housing (N. Y. Const., art. XVIII). This honors our Nation’s commitment to foster the dignity and well being of all its citizens. Public Housing Authorities are set up with this purpose in mind. The respondent in this case has been a leader in fostering the well-being of the poor in its city. This court simply believes that the regulations set down by the State do not go far enough to protect such an important societal interest which the State itself has established. The stakes are too high for the low income housing tenant to allow termination of tenancy without giving the tenant a chance, if tenant so desires, to be fully informed of the case against him in order that the tenant may contest its basis and produce evidence in rebuttal (see Goldberg, supra, p. 4226; Ruffin, supra).
In the context of this section, the fundamental requisite is the opportunity to be heard (Grannis v. Ordean, 234 U. S. 385, 394 [1914]). The opportunity to be heard necessitates a hearing at a meaningful time and in a meaningful manner. (Armstrong v. Manzo, 380 U. S. 545, 552 [1965].) Just as in the Goldberg case, the tenant must have adequate and timely notice detailing the reasons for the proposed termination, and an effective opportunity to defend by confronting and cross-examining any adverse witnesses and by presenting his own arguments and evidence orally (see, e.g., Willner v. Committee on Character, 373 U. S. 96, 103-104 [1963]; Greene v. McElroy, 360 U. S. 474, 496-497 [1959]). An informal, oral statement of tenant’s position will suffice.
*619 The opportunity to be heard would be of little, if any, avail if it did not include the right to be heard by counsel. (Powell v. Alabama, 287 U. S. 45, 68-69 [1932]; Goldberg, supra.) This does not mean that the Authority must provide counsel. It simply means that recipient must be allowed to retain counsel if he desires. ' This county has assisted in providing a recourse for persons of low income who have legal difficulties through the facilities of the Legal Aid Society, which represents petitioner in this case. The Bar has also established a lawyer referral service for those unable to retain counsel. In any event, tenant may still appear by a representative other than counsel if he so chooses, or the tenant may choose to represent himself.
As indicated above, the Board of Review established by section 1627-7.3 consists of three members of the Authority. It reviews appeals from either a finding of ineligibility for admission or ineligibility for continued occupancy. It is axiomatic that an impartial decision-maldng process is essential. (Cf. Matter of Murchison, 349 U. S. 133 [1955]; Wona Yang Sung v. McGrath, 339 U. S. 33, 45-46 [1950].) Some prior involvement in some aspect of the case will not necessarily bar a member of the Authority Board of Review from acting in effect as an appellate court would act (Goldberg, supra). The members of the Review Board should not, however, have participated in making the determination under review. As a practical matter, the determination is normally made by the project manager. If it becomes necessary for the project manager to consult with a member of the Authority, he should consult with one of the members who does not sit on the Review Board. The board must endeavor to reach a decision on its own in order to avoid the unconstitutional procedure of having a member of the Authority judging his own determination (9 NYCRR 1627-7.3 [c], second and third sentences).
It could be argued that one or more members of the Review Board have already, at least indirectly, participated in the initial determination of ineligibility either for admission or continued occupancy or at least have knowledge of the application for admission or the intention to terminate the tenancy. Direct participation in the decision-making process must and can be avoided within the structural framework of authorities and their review boards. Indirect involvement should also be avoided, if at all possible. This may be accomplished if the project manager makes the initial determination. In so deciding, the court must be guided by the practicalities of the situation. It cannot set up independent review boards nor is there any reason to do *620 so if the proper procedures are followed by the authorities. If these procedures are followed, the review board will maintain and discharge its functions as an impartial decision maker and insure to a tenant a full and fair hearing.
These procedural due process standards enunciated above apply to both eligibility for admission and continued occupancy proceedings. A determination after a full and fair hearing must, of course, be based on findings of fact. This was done by respondent in this case and these findings serve to facilitate judicial review.
This court believes that in affording these minimal standards of due process to a tenant, it is in no way imposing an intolerable burden on an Authority. A determination prior to eviction is far better than a de novo judicial proceeding. Many Authorities may already afford a tenant these rights. The number of appeals before a board of review are relatively few in number and will not impose a hardship on the Authority. Even if the Authority felt it was being imposed upon, the tenant’s interest in remaining in his apartment outweighs the authority’s interest in summary adjudication.
The court remands this matter to the respondent for determination and action -consistent with this opinion.