Morris Slifkih, J.
Petitioner, for herself and others similarly situated, brings this CPLR article 78 proceeding requesting several avenues of personal relief, class relief and a declaratory judgment pertinent to the issues raised. Her immediate concern involves review of a determination made by the respondent on Juñe 16,1972 which, after a hearing, resulted in the respondent’s attempt to evict her from a publicly assisted housing project in the City of Yonkers. Her position is that the respondent’s determination of June 16,1972 should be annulled as violative of due process and therefore, illegally made.
In reviewing the facts which are hereafter set forth at length, the court agrees with petitioner’s contention that she was not afforded meaningful procedural due process. This conclusion mandates remanding the matter to the respondent Authority for a de novo hearing at which petitioner shall, if she so desires, be represented by her present counsel. Further, the court reasons that this result precludes consideration of the secondary issues raised, namely, the applicability vel non of the Federal preemption doctrine, the availability of class relief, and the propriety of declaratory judgment. The present determination renders these important and intricate issues premature, as they must be reserved for adjudication if and when the newly ordered administrative determination requires further judicial review.
Turning to the basic issue whether petitioner has been afforded meaningful procedural due process, the facts hereinafter adumbrated are not in dispute. Rhea Newton, petitioner, is a young mother of three infants, the eldest of which is about seven years of age. Since December 10, 1965 she has been and continues to be the recipient of public assistance in the farm of a grant provided by the “ Aid to Families with Dependent Children ” program (AFDC).
On March 26, 1971 petitioner and her children were admitted to residence in an apartment unit owned and operated by the respondent, Municipal Housing Authority for the City of Yonkers (hereafter “ MHA ”). The MHA is a public corporation organized pursuant to article XVIII of the Constitution of the State of New York, section 2 of the Public Housing Law, and chapter HI of subtitle S of title 9 of the Official Compilation *635 of Codes, Rules and Regulations of the State of New York (9 NYCRR 1600 et seq.).
Respondent’s brief indicates that the MHA for the City of Yonkers owns 10 public housing projects that are financed by municipal, State and Federal Government funds, with the exception of one project in which petitioner resides. That project, known as Cottage Place Gardens, is not Federally financed.
Petitioner’s application for public housing, dated January 5, 1969, discloses that her then sole means of subsistence was a public assistance (AFDC) grant in the sum of $217.30 a month. On March 26, 1971, the day petitioner and her family took possession of the apartment unit in the Cottage Place Gardens project, the project manager’s report of that date reveals petitioner’s disclosure that her total income was, by that time, $294.60 a month, a fact verified by the manager with the Social Services Department of the County of Westchester. Thereafter, on January 13, 1972, petitioner returned her certificate on an application for continued occupancy in which she stated her sole income was a public assistance (AFDC) grant of $298 a month.
By her independent survey, the project manager discovered on or about May 22,1972 that petitioner had earned other income from employment. Daitch-Shopwell Stores verified that petitioner had been in its employ from March 15 through June 19, 1971 as a part-time “ checker ”, during which period she earned a gross salary of $436. Similarly, Clairol, a cosmetic firm, indicated that petitioner was employed by it on December 30, 3971 (no date of termination appears on the report), and earned, as a clerk, the sum of $796.43 for the first quarter of 1972. These sums were never reported to the MHA by the petitioner as required by paragraph 10 of the MHA’s monthly lease agreement.
By letter dated and presumably mailed on June 12, 1972 the respondent’s secretary-director notified petitioner that a hearing would be held on June 16 relative to terminating her tenancy for her failure to disclose her income. The letter also advised petitioner of her right to counsel at the hearing.
On June 16,1972, an interval of two days after the letter was received by petitioner, she appeared before the hearing panel without counsel. The hearing transcript discloses that the hearing was opened at 9:30 a.m. at which time the secretary read into the record the contents of the letter sent to Rhea Newton on June 12. Immediately thereafter, she was asked if she received that letter. Upon her affirmative answer, she was promptly *636 interrogated by the secretary concerning her residence in Cottage Place Gardens, her outside employment, and other facets of the Authority’s case against her.
A significant observation, one that cannot escape the eye of even the casual reader of this record, is the fact that Rhea Newton, in the presence of what must have been to her mind a hostile audience, was left by herself to sift the import and direction of the questions propounded to her. She had no witnesses on her behalf, no counsel to buffer the challenges, no advice to lean upon and ho idea respecting the dross-examination of her accusers. She answered every question asked of her; she admitted earning money at outside employment and not reporting this fact to the project manager and, as the following excerpts indicate, she found herself the target of a vigorous examination:
“Mr. Burke: I have established first you came to housing under Welfare, and you get a few dollars more a month than when you first came. Also, that you worked for Clairol starting in Dee. 1971 and that you pmde a total of $796.43.
Section 10 of your lease reads as follows:
‘ The Tenant hereby agrees to report to the Landlord any increase in the aggregate family income within one day prior to the first day of the month following the date of such increase is received.’
In other words, if your income changes during January then before the first of February you would have to go to the office and tell Miss Dalton you were working and give her all the information.
Mr. Burke: Did you know you were supposed to do this?
R. Newton: Yes.
Mr. Burke: But you did not do it.
R. Newton: I kept getting laid off — how could I tell her. If I did I would be paying a high rent and then I might not be working, and then I would still be paying a high rent.
Mr. Burke: But you let it go until it got to be $796.
R. Newton: Why do you keep picking on me. Other people don’t report their income — they keep calling me to the office all the time. And they are only concerned about my income.
Mr. Burke: We are concerned about anyone’s income.”
In response to the question whether she reported her income to “Welfare” (Department of Social Services, County of Westchester) the petitioner said:
“They know I was working. I guess they know the wages and they know it was only a temporary position.”
At the close of the hearing, the following findings were made:
“Evidence was presented that she (petitioner) falsified her application [for public housing] and later her Continued Occupancy form.
Therefore, we find Rhea Newtpn guilty of same by her own admission by a unanimous vote.”
*637 On June 19, 1972, respondent mailed notice to the petitioner informing her that as of July 31,1972, her tenancy would he terminated. Summary proceedings were thereafter commenced in the City Court, City of Yonkers. This court issued a stay pending determination of the instant proceeding.
Petitioner seeks the following modes of relief for herself and others similarly situated:
(1) judgment annulling the MHA’s determination made June 16,1972 which terminated her tenancy;
(2) judgment declaring paragraph 10 of the MHA lease form violative of applicable Federal regulations as promulgated by the United States Department of Housing and Urban Development;
(3) . judgment declaring MHA’s income review of those tenants who receive public assistance violative of section 1627-2.6 of title 9 of the Official Compilation of Codes, Rules and Regulations of the State of New York (9' NYCRR 1627-2.6) ;
(4) judgment prohibiting MHA’s further enforcement of the foregoing allegedly offensive policies;
(5) judgment prohibiting the MHA from continuing summary proceedings against petitioner; and
(6) judgment permitting this proceeding to be considered as a class action with respect to the alleged offensive policies and lease clause.
Por the reason expressed at the beginning of this decision, the court considers only the first branch of petitioner’s request for relief.
There is no doubt, in the court’s view, that Rhea Newton was entitled to a fair evidentiary hearing, one in which the issue of her alleged failure to disclose outside employment and income could be meaningfully explored by adversary process (9 NYCRR 1627-7.3). In a late case involving an attempt by the White Plains Housing Authority to evict a tenant as undesirable, Mr. Justice Mabbach reviewed both Federal and State authorities in defining the minimum requirements of procedural due process. The depth of this understanding of the essential problem is revealed in the following quotation: “A low income housing tenant who is evicted is condemned to suffer a grievous loss (see Anti-Fascist Comm. v. McGrath, 341 U. S. 123, 168 [1951]). The plight of the poor in securing adequate housing is well known in our State and Nation. Housing, like food and clothing, is one of the essentials of human existence. The government has recognized that important public policy interests are promoted by low rent public housing (N. Y. Const., art. *638 XVIII). This honors onr Nation’s commitment to foster the dignity and well being of all its citizens. Public Housing Authorities are set up with this purpose in mind. The respondent in this case has been a leader in fostering the well-being of the poor in its city. This court simply believes that the regulations set down by the State do not go far enough to protect such an important societal- interest which the State itself has established. The -stakes are too high for the low income housing tenant to allow termination of tenancy without giving the tenant a chance, if tenant so -desires, to be fully informed of the case 'against him in order that the tenant may contest its basis and produce evidence in rebuttal.” (Matter of Williams v. White Plains Housing Auth., 62 Misc 2d 613, 618, affd. 35 A D 2d 965). In another, and earlier opinion by Mr. Justice Hopkins (Matter of Vinson v. Greenburgh Housing Auth., 29 A D 2d 338, 340, affd. 27 N Y 2d 675), the applicable due process standard was explained as “'not confined to judicial proceedings, but extend [ed] to every case which miay deprive a citizen of life, liberty or property, whether the proceeding be judicial, administrative, or executive in its nature ’ (Stuart v. Palmer, 74 N. Y. 183, 190-191).” Thus, the basis -for Mr. Justice Mabbach’s review of the action taken by the "White Plains Housing Authority rested upon principles of procedural due process as applied to residents in low income housing. Such due process includes (1) a meaningful opportunity to be heard; (2) an effective opportunity to defend by cofronting and cross-examining adverse witnesses; and (3) the right to the effective assistance of counsel. These principles are of course subsumed by the major predicate — adequate notice — without which no "realistic adversary proceeding can be had. Adequate notice, in this context, affords the defendant time to obtain and. consult with counsel, time for counsel to -arm himself with facts and law, to garner available witnesses favorable to the defense and to prepare an intelligent, informed position.
One might hardly expect the best educated person, mindful of his rights, to adequately meet a" legal or administrative challenge seeking to terminate a property right on two days’ notice. Respondent urges upon this court that it was sufficient notice. Indeed, the record is barren of any inquiry by the hearing officer or the secretary-director whether petitioner desired to be represented by counsel, or whether she understood that was her right (Powell v. Alabama, 287 U. S. 45, 68-69). The recitation of the contents of the June 12, 1972 letter which advised of her right to counsel is not, in this court’s view, a sufficient *639 basis for concluding that petitioner did not desire the assistance of counsel.
This view does no violence to the standard of procedure recently promulgated by the Court of Appeals in Matter of Sumpter v. White Plains Housing Auth. (29 N Y 2d 420, 425) where Judge Gibson wrote: “ It has long been settled that a party aggrived by loss of a pre-existing right or privilege may enjoy procedural rights not available to one denied the right or privilege in the first instance.”
Admittance to residence in Cottage Place Gardens gave Rhea Newton and her children standing to assert this pre-existing right or privilege when the Authority sought to terminate it. She may not have known this and, from the face of the transcript, that is a fair assumption. She may have intended to appear without counsel, as that, too, was her right. However, that inference may not be drawn from the record.
Accordingly, this court holds that a new hearing must be afforded the petitioner if the respondent wishes to proceed with terminating her tenancy. Such hearing must be upon adequate notice of formal charges given with due regard for petitioner’s opportunity to consult with counsel. The court directs, in the event this hearing is to be held, that petitioner’s present counsel represent her if she so chooses.
For the reasons hereinabove set forth, and to the extent indicated, the petition is granted and respondent’s determination made June 16,1972 is annulled on the law and in the interest of justice.
The stay of proceedings for summary eviction pending in the City Court of the City of Yonkers against the petitioner is continued until the procedural steps outlined above have been completed, a decision rendered and served upon petitioner, and for a further period of 30 days to permit petitioner, if so advised, to seek judicial review thereof.