Stanley Gartenstein, J.
The Richmond County Bar Association has been granted leave to appear amicus curiae in support of a unique application which presents a question of novel impression.
The within support proceeding has been pending since July 7, 1971 and has never come to a plenary hearing. During August, 1971, the respondent was unemployed, necessitating adjournment for a work report. On October 18, 1971, respondent failed to appear and a warrant was issued for his arrest, which was outstanding until April 3, 1973 when respondent surrendered on the warrant, accompanied by an attorney assigned by the Richmond County Bar Association to represent him.
The respondent and the Bar Association both request that the court assign counsel to respondent pursuant to article 18-B of the County Law (indigent defendants’ panel). This application is based upon the recent adjudication by the United States Supreme Court in Argersinger v. Hamlin (407 U. S. 25), in which it was held that, absent an intelligent waiver of the right to have counsel assigned in a matter wherein the incarceration of the defendant may result for however short a period of time, any imprisonment is illegal. Respondent argues that inasmuch as the court has the power to incarcerate him for failure to comply with an order of support (see Family Ct. Act, § 454), that the hearing for support is a stage of a proceeding which may lead to deprivation of his liberty and that Argersinger (supra) mandates that he be assigned counsel.
Respondent is receiving public assistance and qualifies financially for legal assistance to the indigent.
CONSTITUTIONAL RIGHT TO ASSIGNED COUNSEL
The right to assigned counsel has its constitutional roots in the Sixth Amendment which was made applicable to the separate States by the Fourteenth Amendment insofar as certain rights later enumerated by separate holdings of the Supreme Court were concerned. However, the Supreme Court has been careful to point out that the classic “ due process ” rights made applicable to the States by the Fourteenth Amendment, although inclusive of the right to counsel, trace their genealogy from different sources. (See Baldwin v. New York, 399 U. S. 66.) A fundamental corollary to the right to consult with and to have the assistance of counsel is the right to assigned counsel in the event a defendant cannot afford the cost thereof.
*518 Tracing Supreme Court holdings as regards the right to assigned counsel:
Powell v. Alabama (287 U. S. 45) reversed a conviction for rape, a capital offense, because the defendant therein had been denied the right to counsel.
Gideon v. Wainright (372 U. S. 335) involved a noncapital felony in which the court held the Sixth Amendment guarantees of counsel applicable to the States by the Fourteenth Amendment. The Supreme Court, in this matter, seemingly approved a criterion of a prison sentence of six months’ duration as the line of demarcation defining the obligation of the respective States to supply free counsel. This holding specifically overruled Betts v. Brady (316 U. S. 455) which had held to the contrary in 1942. What was unclear, however, was whether or not it was the intention of the Supreme Court to simply overrule Betts and set up a six-month absolute criterion or to have Gideon serve as one milestone along the way in a cumulative body of law ever increasing those rights recognized by prior holdings.
The latter possibility appears, inferentially, to be the more valid one in the light of Argersinger v. Hamlin (supra, p. 33) in which the Supreme Court obliterated the “ six-month ” artificial boundary line and stated, in sweeping language: “We are by no means convinced that legal and constitutional questions involved in a case that actually leads to imprisonment even for a brief period are any less complex than when a person can be sent off for six months or more ”.
While the Supreme Court appears to be speaking of criminal imprisonment, thus apparently excluding support proceedings in this court which are essentially civil, it cites Matter of Gault (387 U. S. 1) a case in which the Supreme Court discusses that due process required in juvenile proceedings which the court held definitely not criminal in nature. This would appear to blunt the argument that Argersinger applies only to criminal proceedings.
The sweeping language of the Argersinger court (pp. 37-38) would appear to be suggestive of an all-inclusive rule holding that a person may not be imprisoned in any matter without having been represented by counsel, retained or assigned, or effectively having knowingly waived said right: “ ‘ We hold that no person may be deprived of his liberty who has been denied the assistance of counsel as guaranteed by the Sixth Amendment. This holding is applicable to all criminal prosecutions, including prosecutions for violations of municipal ordinances. *519 The denial of the assistance of counsel will preclude the imposition of a jail sentence. ’ ”
"Scattered authority exists which sheds little light on the instant question. Marston v. Oliver (324 F. Supp. 691 [E. D. Va., 1971]) involved a traffic violation; Stevenson v. Holzman (254 Ore. 94) involved the violation of a municipal ordinance. Both eases are examples of the extension of the right to counsel.
One old case involving support was Evans v. Rives (126 F. 2d 633 [1942]) in which a one-year sentence following conviction for failure to support a minor child was reversed "because of the denial of defendant’s right to the assistance of counsel. It must be noted, however, that this matter involved behavior which was made criminal by the laws of the particular jurisdiction. This situation is distinguishable from the law in this jurisdiction which holds that the failure to pay support in the face of a valid order, is, upon proper adjudication, tantamount to contempt punishable by incarceration in the civil jail. (See Matter of Hofman v. Malcolm, 71 Misc 2d 251 [Sup. Ct. N. Y. County, 1972].) Whether or nqt criminal penalties exist for failure to support in addition to the civil commitment in this jurisdiction is irrelevant in the light of the specific holding therein barring commitment to criminal facilities.
Despite the importance of this question, it is as yet unadjudicated. Can any insight be gained by examining the development of a parallel right?
COMPARISON WITH CONSTITUTIONAL BIGHT OF TRIAL BY JURY
A crucial factor makes the constitutional right to trial by jury as ‘ ‘ transferred ’ ’ from the Sixth Amendment to the Fourteenth Amendment relevant at this point. This is the fact that this right was ‘ ‘ transferred ’ ’ along with the right to counsel and exists in absolute form regardless of whether or not the particular State in question calls the crime under consideration a felony or misdemeanor. (Duncan v. Louisiana, 391 U. S. 145.) What is more important at this point is the fact that the Supreme Court later expanded Duncan and set up a six-month line of demarcation, corresponding to the former boundary line as regards the right of counsel, beyond which the right of trial by jury is mandatory (Baldwin v. New York, 399 U. S. 66). Thus these two “transferred” rights, that of jury trial and that of counsel, both had six-month “boundary lines”. This line of demarcation was wiped out, vis á vis the right to assigned counsel in Argersinger. Is it reasonable to predict that an obliteration of the six-month rule as regards the right *520 of trial by jury will be forthcoming? This question takes on crucial importance here because (a) the incarceration--for violation of a support order under section 454 of the Family Court Act is in fact for a maximum duration of six months; and (b) those cases testing the constitutionality of this right to imprison have done so under the trial-by-jury branch of the Fourteenth Amendment.
In United States ex. rel. Griffin v. Martin (409 F. 2d 1300) the Second Circuit affirmed a decision upholding the constitutionality of section 454 of1 the Family Court Act in the face of an attack based upon a claim of deprivation of the right of a jury trial. It was pointed out that the commitment jp this instance is civil for intentional disregard of a court mandate. (See, also, Hoyt v. Pierce, 31 A D 2d 582 [3d Dept.]; Fuller v. Fuller, 31 A D 2d 587 [3d Dept.].) Accordingly, the Baldwin doctrine did not come into play (to similar effect, citing Griffin, see Ciaravina v. Ciaravina, 38 A D 2d 722). It was also pointed out that the Baldwin doctrine did not affect proceedings leading to imprisonment for violation of a support order because section 454 of the Family Court Act limits the term of incarceration to a maximum of six months, thus falling short of Baldwin.
In Matter of Chase v. Brooke (34 A D 2d 595, affd. 27 N Y 2d 700) the Third Department, and then the Court of Appeals affirmed a commitment for violation of support order for 90 days on the grounds of willfulness. At the same time, an attack in the Federal courts fared no better and the Second Circuit Court of Appeals (420 F. 2d 296) again upholding the constitutionality of section 454 of the Family Court Act, relied upon and quoted from Griffin (supra). What is of vital importance, however, is the fact that Brooke then carried his appeal to the United States Supreme Court which denied certiorari (397 U. S. 1000).
Since we have no holdings wherein civil commitments reached the Supreme Court on the right to assigned counsel under Argersinger, we must reason from Brooke which did so on the issue of trial by jury.
Two possibilities present themselves as to why certiorari was denied in Brooke: (A) that the Supreme Court was content to leave the six-month boundary set up in Baldwin as a permanent point of demarcation, therefore rejecting an appeal which would have put it in a position where it could have stricken down the six-month rule; or (B) that the Supreme Court still intends in the future to obliterate the six-month rule for jury trials as it did with the right to counsel in Argersinger, and *521 that certiorari was denied in Brooke because of some other factor. If this latter line of reasoning holds true as might be inferred from the similar development of these two rights under the Fourteenth Amendment, the only other unique factor of Brooke which might cause the high court to deny certiorari would be the fact that civil commitment for intentional violation of court mandate was involved and that the court was impliedly holding that this type of commitment does not fall within the constitutional guarantees of Baldwin. If this be so, and if we continue to assume arguendo that the court intends to treat jury-trial and right-to-counsel cases similarly, the exemption for civil commitments would also apply to right-to-counsel cases. In that event, and based upon this double syllogism in which we must indulge for want of definitive pronouncements, the court would then have to hold that the right to assigned counsel in a support matter is not mandated by the Fourteenth Amendment.
Nothing, however, would prevent.the courts of this State from extending the classical rights guaranteed by the Fourteenth Amendment beyond that point required by the Constitution. We are in fact in the midst of this process. In Matter of B. (30 N Y 2d 352) the Court of Appeals mandated the assignment of counsel in a neglect and/or abuse matter even though no criminal conduct was at issue. And, but two days before the issuance of this decision, the Appellate Division in this Department ruled in Jennings v. Jennings (42 A D 2d 568) that on a rehearing of commitment proceedings reversed on other grounds, the de nova proceedings were to proceed only after counsel was assigned free of charge by the trial court to the respondent. Although this decision does not mandate this course at the earliest support hearing, the Appellate Division is clearly issuing a caveat that substantial rights shall not be adjudicated without the protection of counsel, retained or assigned. Its intention is clear as it was in its prior holding as regards article 18-B of the County Law in which it held that the apparent specific provisions of section 722 et seq., seemingly restrictive, were only implementing tools and that the right to assign counsel, being an inherent power of the court was not and could not be restricted. (Matter of Stream v. Beisheim, 34 AD 2d 329.)
In Vanderpool v. Vanderpool (74 Misc 2d 122), Mr. Justice Louis B. Heller, ruling that counsel fees for an indigent defendant in a matrimonial suit must be paid by the City of New York in some manner, also held that the terms of article 18-B do not *522 set up machinery for payment of a matrimonial defendants’ counsel fees, reasoning that article 18-B clearly contemplated criminal proceedings. He urged the Legislature to amend this statute so that it would provide machinery for assignment of counsel thereunder in this type of matter. In Vcmderpool, however, the wife was the defendant and no issue of possible incarceration for failure to pay support as ordered was at stake. In this matter, it is; the respondent husband clearly, at some stage of the proceeding, is liable to a loss of his liberty. We respectfully believe that the clear intent of the Appellate Division to ever widen the availability of counsel must also be construed and/or effectuated as a mandate to lower courts to extend the most liberal construction, consistent with its written terms, to article 18-B. Accordingly, although the statute by its terms (§ 722) is framed to encompass persons “ accused of crime ”, section 722-a, defines a crime as “ a felony, misdemeanor, or the breach of any law of this state * * * other than one that defines a ‘ traffic infraction, ’ for which a sentence for a term of imprisonment is authorized upon conviction therepf ’ ’. Under this definition, incarceration for violation of a support order is not excluded under the statute’s only exclusionary clause, viz., that of a “ traffic infraction ’ ’. The only other inference must be that the statute is flexible enough to be construed to include it. We believe, in the light of the Appellate Division’s clear mandate, that it intended to have the lower courts under its jurisdiction implement this right to counsel, and that in the light of this clear directive, this construction of the statute, although liberal, does not torture it out of its context. The intent of the Appellate Division is to be implemented immediately.
Respondent is assigned “ 18-B counsel”.
The Clerk is directed to effectuate the terms of this order prior to the next hearing date.
Motion granted.