Morrie Slifkin, J.
By this habeas corpus proceeding, petitioner raises an issue of substantial import involving an indigent’s right to court appointment of counsel at a Family Court hearing relative to violation of that court’s support order. Predicated upon the facts which follow and the current path of authoritative judicial pronouncements, this court concludes that every respondent who appears before the Family Court to answer for the alleged violation of its support orders, must be informed at the outset that if he has not the means to afford private counsel, the court will appoint an attorney to represent him.
On January 15, 1973, after notice was sent to the relator’s husband that he would be arrested pursuant to a warrant if he did not appear for a hearing, Nicola and Luba Amendola came before the Family Court sitting in Yonkers, New York, for the purpose of Nicola Amendola’s arraignment. (See Appendix, n. 1.)
Judge Dachenhausex’s deposition states that on this arraignment, Nicola Amendola ‘ ‘ was advised of his rights as shown in the transcript of the minutes before the court, waived counsel and admitted the violation. ’ ’ The Judge then states as follows: ‘ ‘ I thereupon sustained the petition and after hearing as indicated in the minutes before the court on January 15,1973, found that Nicola Amendola had wilfully violated the order of the Family Court and committed him to Westchester County Penitentiary for a period of four months.” (Dachenhausex, affidavit, p. 6.)
The Legal Aid Society of the County of Westchester acting for the relator, sought and obtained a writ of habeas corpus from this court upon the incarceration of Nicola Amendola. On January 22,1973, this matter was heard and argued at length. At the conclusion of argument, the court released Nicola Amendola in the custody of Jerrold Slate, Esq., an attorney associated with the Legal Aid Society, and granted both sides additional time to submit further briefs and memoranda on the issue. Thereafter, the court was informed that Mr. Slate was to terminate his service with the Legal Aid Society upon which event, the court permitted the substitution of Bernard Clyne, Esq., the director of the Society, as Amendola’s custodian pending the resolution of this proceeding.
*799 The issue is posed upon the following excerpt from the transcript of proceedings before Judge Dachexhatjsen on January 15, 1973:
“the court: " * * The petition asks that you be dealt with in accordance with Section 454 of the Family' Court Act. You have the right to be represented in Court at all times by your own lawyer. You may, if you wish, waive a lawyer and speak for yourself.
“ mr. amendola : I tried to get a lawyer the last time I came to court and then me and my wife got together, we talk it over, we want to get together now. The lawyer says he want $250. to come to Court. And me and my wife want to get together again so the last time I got the letter I’m working in Connecticut, I don’t know, I don’t have a letter to come to court.
“the court: I don’t understand. You said something about Connecticut?
“me. amendola: I work in Connecticut and they sent the letter to come to Court up my house, in my father’s house. I don’t come to Court because I don’t know anything about it; the letter.
“ the court : Did you keep the Court advised of your address? What do you want to do about an attorney? What do you want to do about an attorney?
“mr. amendola: The only thing I want to take my wife and baby back. I want my wife off Welfare.
“the court: My question was, what do you want to do about an attorney? I advised you that you have the Constitutional right to be represented by an attorney at all stages of the proceeding, right?
“ MRS. amendola : Can I say something? He doesn’t understand things, clearly. I have to explain it to him simply. He doesn’t understand some things. He says, like, do you want a lawyer? You know, if you want a lawyer, tell him that.
“ MR. amendola : I can’t afford a lawyer.
“ the court: You don’t want a lawyer?
“ MR. AMENDOLA: No.
“the court: You want to speak for yourself?
“mr. amendola: I speak for myself.”
The petitioner’s position is that the foregoing colloquy sufficiently demonstrates the failure of the Family Court to apprise the respondent of his right to the appointment of counsel, rendering the subsequent proceedings constitutionally infirm.
In expressing its agreement with the petitioner’s conclusion, this court will attempt an exposition on the law concerning this very significant issue. It is the court’s hope that respondent’s counsel will seek immediate appellate review of the judgment to be entered hereon with a view to settling the question in this State.
By part 5 of article 4 of the Family Court Act, the Legislature has seen fit to clothe the Family Court with appropriate judicial powers to insure compliance with that court’s support orders. Section 454 of that act provides, inter alla, for the imposition of sanctions upon a defaulting respondent, as follows: ‘ ‘ If, after hearing-, the court is satisfied by competent proof that the respondent has failed to obey any such order, the court may (a) commit *800 the respondent to jail for a term not to exceed six months, if the failure was willful.”
Relative to the hearing prescribed by the foregoing statute, part 3 of article 4 of the Family Court Act, in section 433, states in pertinent part: “When a respondent is brought before the court pursuant to a warrant, the court shall proceed to hear and determine the case. The respondent shall be informed of the contents of the petition, advised of his right to counsel, and shall be given opportunity to be heard and to present witnesses.” (Italics added.)
Embodied in section 433 is the codification of minimum procedural due process rights comprehending the right of an accused to know the nature and scope of the charge laid against him; the right to the assistance of counsel; the right to be heard in his defense; and the right to confront his accuser with witnesses favorable to the defense. The County Attorney, appearing for the respondent Warden and the affidavit of Judge Daoheiíhauseit acknowledge Amendola’s right to the assistance of counsel, but make several distinctions which they see as taking the instant matter out of the ambit of petitioner’s argument. First, and most important, is their argument that this case is not criminal in nature. Second, they urge that Amendola waived his right to counsel-in any event.
In a line of landmark cases, the Supreme Court of the United States has consistently hewed to the view that a person accused of crime has a constitutionally protected right to the court appointment of counsel to represent him where he cannot otherwise afford to pay for private counsel. (Gideon v. Wainwright, 372 U. S. 335; Argersinger v. Hamlin, 407 U. S. 25.) Whether there is a concomitant right where the accused stands before the court in a civil proceeding is the subject of much debate in the learned briefs submitted to the court. It is to that precise issue which the court must first address itself.
Doubtless, the perimeters of procedural due process must flex to encompass exigencies presented in each new era wherein courts are called upon to determine the meaning and substance of due process. (Appendix, n. 2.) Philosophical niceties are no substitute for pragmatic attempts to arrive at a meaningful single standard by which men are to be judged. It is the concept expressed above which gives life to the phrase “ due process ”, upon which the foundation of our judicial system rests.
The separation of the single concept of due process into divisions embracing procedural and substantive aspects has a practical utility. The further attempt to subclassify procedural *801 due process into criminal and civil divisions may well result in the negation of any semblance of due process in a given case. (Danforth v. State Dept. of Health & Welfare, 41 USLW 2586 [Sup. Jud. Ct., Me., April 17, 1973].) The protection of that right rises above every consideration and is, in this court’s opinion, its chief charge.
It is a peculiar sophistry that commands attention to the distinction between civil and criminal proceedings when, at the end of either, the commitment to a jail cell looms before the accused. The loss of liberty is equivalent regardless of the manner provided for its execution and despite the forum in which it is mandated.
The courts of this State have been aware of and are sensitive to the demands of due process whatever the format of given actions or proceedings before them. Perhaps best stated recently by Chief Judge Fuld in People ex rel. Silbert v. Cohen (29 N Y 2d 12, 14), is the following proposition upholding a juvenile’s right to the assistance of counsel at a parole revocation hearing: ‘ ‘ The right to be heard would be ‘ of little avail if it did not comprehend the right to be heard by counsel ’ (Powell v. Alabama, 287 U. S. 45, 68-69), and no tribunal, whether board or court, should be allowed to base its determination on a possibly mistaken view of the facts owing to the parolee’s inability, absent counsel, to make a proper factual presentation. It is for such a reason, among others, that the right to a lawyer, far from being limited to the narrow confines of criminal prosecutions, has been treated ‘ as an essential element of due process applicable to all proceedings, whether they be classified as civil, criminal or administrative, where individual liberty is at stake. ’ (People ex rel. Menechino v. Warden of Green Haven State Prison, 27 N Y 2d 376, 383).”
The court recognizes at once that the Family Court did advise Amendola of his right to counsel in accordance with the mandate of the statute (Family Ct. Act, § 433). When faced with Amendola’s response that he could hot afford a lawyer, however, the Family Court did not then further advise Amendola of his right to court-appointed counsel. To borrow the reasoning of Powell v. Alabama (287 U. S. 45, 68-69), Amendola’s right to counsel, as circumscribed by the Family Court’s failure to explain his further right as an indigent to free counsel, was “ of little avail ”.
It may be argued that the statute (Family Ct. Act, § 433) does not require advising an indigent respondent of his right to a free lawyer. Indeed, the Sixth Amendment to the Federal Constitu *802 tian, which provides for the assistance of counsel to defendants in all criminal prosecutions likewise says nothing about free counsel. In the Supreme Court’s interpretation of the Fifth and Fourteenth Amendments’ guarantee of due process where one is faced with loss of liberty, the right to court-appointed counsel in less than felony cases was born and expanded (Gideon v. Wainwright, 372 U. S. 335, supra; Argersinger v. Hamlin, 407 U. S. 25, supra).
New York has been in the forefront of those States which have judicially recognized the right of an accused to the benefit of court-appointed counsel (People v. Witenski, 15 N Y 2d 392 [a criminal proceeding]; People v. Hamilton, 26 A D 2d 134 [probation violation hearing]; People ex rel. Combs v. La Vallee, 29 A D 2d 128,131 [parole violation hearing]). A similar right has been held to apply in Family Court in the case of a young mother who was ordered jailed for failing to support her infant child (People ex rel. Decker v. Martin, 57 Misc 2d 57) where the Supreme Court, Onondaga County, ordered the relator released from custody upon finding she had not been properly advised of her right to assigned counsel. (See, also, People ex rel. Schaffer v. Coleman, Sup. Ct., Rockland County, Indictment No. 1504/73, March 25,1973.)
In the Matter of Ella B. (30 N Y 2d 352, 356), Chief Judge Fttld, in a terse opinion, directed the Family Court to arrange for the appointment of counsel at a de nova hearing brought to test the fitness of a mother to retain custody of her infant child. He said: “ An indigent parent, faced with the loss of a child’s society, as well as the possibility of criminal charges (Family Ct. Act, §§ 1014, 1052, 1055; Penal Law, § 260.10), is entitled to the assistance of counsel # * * with assigned counsel if the parent lacks the means to retain a lawyer. ’ ’ (Affidavit, n. 3.)
The court finds here, too, that Nicola Amendola could well face criminal prosecution for the charge lodged against him by the Family Court’s enforcement officer (Penal Law, § 260.05). Such a possibility alone serves to emphasize the paramount importance of plenary due process safeguards which the court is in duty bound to secure for those who appear before it in any case where loss of liberty may result. (Affidavit, n. 4.)
The court is not unaware of the heightened administrative burden which the rule enunciated herein will cast upon an already hard-pressed Family Court. It is unfortunate that this decision comes at a time when administrative and fiscal authorities are strained to the limits of their resources to insure the effective continuance of court administration. But the *803 demands of due process, the raison d’etre of our courts and our bar, cannot be avoided or evaded by stating that we cannot afford the time, space and manpower required to implement our principles. The court is of certain mind that members of the Bar will accept their professional responsibility in heeding the court’s call for assistance in the many cases requiring their appointment. (Code of Professional Responsibility, canon 2, EC 2-29; Appendix, n. 5.)
The court is mindful, too, of the ramifications this decision may engraft upon civil contempt proceedings in the courts of this State. However, no opinion need be expressed on that subject, it being preferable to leave the matter for appropriate adjudication if and when the question is presented.
' Argument has been made upon the constitutional ground of denial of equal protection (if the Family Ct. Act, § 433 is read to negate the right to court appointment of counsel) respecting Amendola’s imprisonment sans benefit of counsel. The court does not reach that question in view of the disposition made herein. The ancient canon of statutory construction — that only as a last resort, after exhausting every resource, will the courts denounce a statute as unconstitutional — requires the court to read the statute in a manner consistent with constitutionality (Sage v. City of Brooklyn, 89 N. Y. 189, 196). So doing, the phrase ‘1 advised of his right to counsel ’ ’ in section 433 of the Family Court Act is read to mean and intend that every respondent be advised not merely of his right to be represented by his own attorney, but of his right to court-appointed counsel where he cannot afford otherwise.
The respondent’s position regarding Amendola’s waiver of his right to counsel is not well founded. The law of waiver, announced years ago in Johnson v. Zerbst (304 U. S. 458, 464) is simply stated. It comprehends the intelligent, intentional relinquishment of a known right. One cannot waive rights in a vacuum of knowledge. Amendola needed to know at the outset that he could have the assistance of a free lawyer. Absent that information, he cannot be deemed to have waived this right. (See, also, Matter of Ella B., 30 N Y 2d 352, 357, supra; Carnley v. Cochran, 369 U. S. 506; Boykin v. Alabama, 395 U. S. 238, all on the waiver proposition.)
Two recent cases decided by the Appellate Division, Second Department, are noteworthy in this case. Each of them expresses the view that the respective respondents before the Family Court should be offered the option of obtaining court-appointed counsel *804 upon remand. (Jennings v. Jennings, 41 A D 2d 972; Amicucci v. Moore, 42 A D 2d 701.)
The court finds that the Family Court’s disposition of the Amendola case was legally infirm for two principal reasons, both based upon the mandate of section 433 of the Family Court Act.
(1) Failure to advise Amendola of the contents of the petition. The court merely recited that Amendola was to be dealt with in accordance with section 454 of the Family Court Act. In view of his meager education and lack of understanding the court’s opening remarks were not comprehensible to respondent.
(2) Failure to advise Amendola of his right to appointed counsel.
Accordingly, the petition is granted, the writ is sustained and Nicola Amendola is hereby ordered released from the custody of the Director of the Legal Aid Society forthwith; the matter is remanded to the Family Court for a de nova hearing upon the violation charged against him at which time the Family Court shall proceed on terms consistent with the opinion expressed by this court. (Appendix, n. 6.)
APPENDIX
1. The history of this case began with an application filed by Luba Amendola for the support of herself and her infant daughter in the Family Court, County of Westchester, on November 1, 1971. At that time, Mrs. Amendola and her daughter were receiving public assistance. At the hearing later that month, Nicola Amendola was directed to pay the sum of $25 a week through the court to his wife. No payments were forthcoming until January 18, 1972 when Mr. Amendola forwarded the sum of $50. On January 28, 1972, Judge Giirahian, sitting on the arraignment of Nicola Amendola for violation of the payment order, permitted withdrawal of the violation in view of the recent $50 payment. On May 18,1972, the court’s enforcement officer warned Mr. Amendola that notwithstanding his total payment of $375 at that time, he was delinquent with respect to the arrears yet due in the sum of $250. On July 14, 1972, a violation notice was sent to Mr. Amendola when his arrears had risen to $375. At the arraignment of August 11, 1972 Judge Gueahian ordered Mr. Amendola committed to the Westchester County Penitentiary, suspending that commitment on condition that the respondent obtain employment within 30 days or alternatively submit a detailed listing of his efforts to obtain employment. The matter was adjourned to September *805 22, 1972, prior to which Mr. Amendola found employment. On September 22, with {he knowledge of such employment, Judge GrURAHiAN increased the November, 1971 support order calling for the payment of $45 a week and $5 a week additional to cover the accrued arrearage of $600. On December 1, 1972, a violation arraignment was scheduled before Judge Dachem-hauseh where, upon the nonappearance of Mr. or Mrs. Amendola, a warrant was issued for the arrest of Nicola Amendola. After an adjournment, directed upon the subsequent surrender of Mr. Amendola, the Family Court granted a further continuance to allow the respondent to appear with counsel. On December 20, the return day, respondent failed to appear. A further warrant notice was sent out advising the respondent of a new hearing date, January 12, 1973, and directing execution of the arrest order if respondent failed to appear. On January 15, 1973, Luba and Nicola Amendola appeared before Judge Daoherthausest where the latter proceeded to arraign Nicola Amendola for violation of the support order previously made as modified.
2. ‘ ‘ The history of American freedom is, in no small measure, the history of procedure.” (Malinski v. New York, 324 U. S. 401, 414.)
3. The general right to counsel has been the subject of recent cases involving indigents before the various housing authorities in this State. (See, e.g., Matter of Williams v. White Plains Housing Auth., 62 Misc 2d 613, affd. 35 A D 2d 965; Matter of Vinson v. Greenburgh Housing Auth., 29 A D 2d 338, affd. 27 N Y 2d 675; Matter of Newton v. Municipal Housing Auth. for City of Yonkers, 72 Misc 2d 633.)
4. “ The history of liberty has largely been the history of observance of procedural safeguards.” (McNabb v. United States, 318 U. S. 322, 347.)
5. American Bar Association Code of Professional Responsibility, adopted by and for the New York State Bar effective January 1,1970.
6. Upon completion of the draft of this decision, the court became aware of a Family Court decision which reached the same conclusion as here announced on somewhat differing grounds (Matter of Linda G. v. Theodore G., 74 Misc 2d 516). The major difference between the cases was respondent’s appearance in court accompanied by an attorney assigned by the Richmond County Bar Association who requested the court to formally assign counsel pursuant to article 18-B of the County Law.