OPINION OF THE COURT
Charles E. Ramos, J.
This holdover proceeding concerns novel issues involving restrictions on the manner in which tenant’s associations may manage buildings leased to them by the City of New York.
This proceeding was instituted in the name of the City of New York but the real party in interest is a tenant’s association which may soon own the premises 314-316-318 West 36th Street, New York City, pursuant to the terms of an interim lease which is more fully described below. The parties are: as petitioner, the 314-316-318 West 36th Street Tenant’s Association; as respondents, Richard Currie (Currie) and Buckley Tinga (Tinga) (tenant and subtenant respectively).
*292 BACKGROUND
The premises (and others) were acquired by the City for nonpayment of real estate taxes. Some of these so-called “in rem” buildings are being transferred on a selected basis to community groups, private owners and tenants through the Division of Alternate Management Programs of the City’s Department of Housing Preservation and Development (HPD).
Title is transferred to the tenants only after a probationary leasing period. These “interim” leases are offered to organized tenants in order to afford them the opportunity to lease, manage and ultimately purchase the City-owned buildings in which they reside. Once a tenant’s association executes a tenant’s interim lease (TIL) the building must meet operating expenses from the rents collected. If and when HPD concludes that the tenants have adequate housing management skills and if the building is self-sustaining (i.e., rents cover operating and maintenance costs), then the building can be sold to the tenants as a cooperative subject to approval of the offering plan by the Attorney-General of the State of New York.
In this case, the petitioner has leased and managed the premises since 1979 and a sale to the tenants is near. This proceeding is part of a struggle between the petitioner and subtenant Tinga on the one hand and the prime tenant Currie on the other, as to who will be granted the right to purchase apartment 5-C at 318 West 36th Street.
THE FACTS
Currie was a tenant of the premises for many years. After the building was transferred to the City and after the first TIL lease, Currie, while an officer of the petitioner, requested, and was granted, permission to sublet. (It should be noted that the petitioner’s by-laws permitted such subletting at that time.) The respondent Tinga then began his status as a subtenant, which status continues to this day.
The present executive board of the petitioner, at the urging of HPD, has been enforcing a more restrictive policy regarding sublets as the date for conversion nears.
*293 The petitioner caused a letter to be sent to Currie which stated that because of his long absence from the apartment, (a) he was no longer to be considered a tenant of record, (b) rent would not be accepted from him, and (c) Tinga would be offered the apartment.
Upon receipt of that letter, Currie commenced proceedings to remove Tinga as his subtenant.
The petitioner, thereafter, commenced this proceeding.
RESTRAINTS ON PETITIONER’S POWERS
All parties concede that because the premises are City owned, neither rent control, rent stabilization nor the Emergency Tenant Protection Act apply. To complete the regulatory void, HPD has, as yet, failed to formally promulgate any regulations.
The petitioner contends that without any applicable rent regulation the common law applies, with the respondent Currie “at its mercy”.
However, the petitioner has neglected three separate restraints on its powers; they are (1) the Fourteenth Amendment of the United States Constitution, (2) policy declarations by HPD, and (3) the petitioner’s own by-laws.
If the petitioner seeks to avail itself of the privileges of City ownership it must also be restricted by those constitutional restraints on the City’s powers that would not otherwise encumber a private owner at common law. At the very least the procedures adopted by the petitioner must satisfy the due process requirements of the Fourteenth Amendment. (See Thorpe v Housing Auth., 393 US 268; Matter of Williams v White Plains Housing Auth., 62 Misc 2d 613.)
The minimum safeguards required by due process depend on the nature of the interest of the government and the rights of the individual so affected. (See Goldberg v Kelly, 397 US 254.)
Currie argues: (a) that contrary to what occurred here, a notice to cure must be served which would afford him the opportunity to comply with the changed regulations and thereby avoid eviction; (b) since the interest of the City is occupancy of the apartment by the tenant of record, any procedure that goes beyond that so as to permit the petitioner to promote a personal preference of one tenant over *294 another, violates his rights without any basis in a demonstrated governmental need; and (c) the petitioner’s actions run contrary to constitutional principles.
In addition, there is in evidence a letter from HPD, which sets forth the policy restraints it seeks to impose on TIL buildings. This policy is intended to achieve a fair and equitable result if and when a TIL building is sold to the tenants.
Because TIL buildings are sold to the tenants as co-ops at very reasonable prices, HPD requires that only “tenants of record” will be permitted to purchase and only if those tenants occupy those apartments as their primary full-time residence.
In order to enforce this policy, tenants in TIL buildings may not sublet unless, (a) there is prior approval by the tenant’s association (the petitioner herein), (b) there is prior approval by HPD, (c) the application is supported by prior documentation, (d) it is for a limited duration, and (e) it is not renewable. HPD requires the petitioner to enforce this policy. The policy letter also suggests that the tenant be given the opportunity to move back so as to cure the “illegal” sublet.
The third area of restraint is article IX of the by-laws adopted by the petitioner. Paragraph 1 of article IX provides: “the members of the association [the petitioner] shall adopt form lease number 327 published by Julius Blumberg Inc., as prescribed by the City of New York Department of Housing Preservation and Development, Office of Property Management”.
This standard form of lease provides, among other things, for the service of a notice to cure in the event of any claimed violation of its terms. Although no leases have been executed by any of the tenants, the. “adoption” of form 327 imposes the provisions therein set forth upon petitioner and respondents alike, including the opportunity to cure.
ANALYSIS
The petitioner contends that this proceeding represents the fulfilling of its obligations pursuant to the terms of the TIL program to effectuate HPD’s policies with regard to subletting.
*295 Respondent Currie argues that he was denied due process by reason of the summary termination, which did not afford him the opportunity to “cure”, and that there is no governmental interest demonstrated on this record that required that any tenant in a City-owned building be “at the mercy” either of the City or the tenant’s association.
The termination letter does raise serious questions about procedural due process. Neither the letter nor the notice of termination provides for an opportunity to cure, nor does the letter advise Currie of any change in policy with regard to sublets or any revocation of petitioner’s prior consent to the sublet.
The petitioner’s contention, that because the premises are owned by the City it has the right to terminate Currie’s tenancy without cause, is rejected.
Acting as an instrumentality of the State, the petitioner cannot, without cause, favor Mr. Tinga over Mr. Currie. The sole legitimate interest of the State is to insure that only bona fide tenants purchase their apartments, and Mr. Currie must be afforded the opportunity to regain his bona fide tenant’s status after proper notice.
The court must therefore impose upon the petitioner the obligation to afford Mr. Currie an opportunity to cure. Mr. Currie must be (a) notified by the petitioner that the consent heretofore given has been rescinded, (b) notified that he must timely proceed to evict his subtenant, and (c) that in the event he fails to so proceed, his tenancy will thereafter be terminated.
Accordingly, the petition is dismissed, with prejudice.